THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LEWIE ROBINSON, JR., Defendant-Appellee.

Second District   No. 2—00—0240

Opinion filed April 27, 2001.—Rehearing denied June 14, 2001.

Ronald G. Matekaitis, State's Attorney, of Sycamore (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Charles R. Rea, of Plano, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

In April 1999 defendant, Lewie Robinson, Jr., was charged by information with unlawful possession of less than 15 grams of a controlled substance (cocaine). 720 ILCS 570/402(c) (West 1998). The charge resulted from the stop of a vehicle in which defendant was a passenger and was searched by an officer of the Sandwich police department. The controlled substance was found in one of defendant's pockets. Defendant filed a motion to quash his arrest and suppress the evidence, asserting that the detention, search, and arrest of defendant violated the provisions of the federal and state constitutions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. On January 13, 2000, the trial court conducted an evidentiary hearing on the motion. After

considering the legal memoranda submitted by the parties, the trial court granted defendant's motion, and the State timely appealed (145 Ill. 2d R. 604(a)(1)). We affirm.

At the hearing, Officer Thomas Richardson of the Sandwich police department testified that, on April 1, 1999, at approximately 8:40 p.m., he stopped a 1987 Chevrolet van because he observed a covered registration sticker and an object hanging from the rearview mirror. Richardson approached the driver and asked for his identification and his insurance card. He also asked for identification from the right front seat passenger, Ignacio Rosario. The officer knew defendant from past experience. Richardson advised the driver, Steven Burns, of the reason for the stop and further advised that he would write a warning for the obstructed windshield and the obstructed vehicle sticker. Two or three minutes had elapsed. After his initial conversation with the driver, Richardson ran a computer check of the individuals from his squad car. This took up to 10 minutes. There were no warrants for defendant.

Richardson then again approached Burns, the driver, because of the "extreme odor of alcohol" coming from inside the vehicle. He did not see any open alcohol container in the car, and defendant was not doing anything unusual or suspicious. Richardson asked Burns to step outside and escorted him back to the squad car to perform a field sobriety test. Burns passed the test. The officer then issued written violation warnings. No citation was given for driving under the influence of alcohol. Then the officer asked Burns for permission to search the vehicle. Rosario, who heard Richardson ask for permission to search the car, said that it was his vehicle and that Richardson could "go ahead" and search the car. Richardson did so. He also asked Burns for permission to search his person, and Burns said he could "go ahead" as he had nothing on him. Richardson also escorted Rosario out of the vehicle and asked to search his person. Rosario had nothing on him. At this point there were two officers at the scene.

Richardson asked defendant to step out of the car. According to Richardson, defendant was now extremely nervous. Richardson asked to search defendant's person and defendant said "go ahead." Defendant was about three or four feet from the passenger side of the van. Defendant was wearing jeans and a shirt or jacket. Richardson testified that he did not frisk defendant, but rather he searched his person and located two small clear plastic baggies of white powder in defendant's right front pocket. Richardson took the items, ordered defendant to the ground, pulled out his service revolver, and placed defendant under arrest for the unlawful possession of a controlled substance. On cross-examination, Richardson stated that the vehicle was not registered to defendant and that defendant was not the driver.

Defendant testified that he was sitting in the backseat of the vehicle. He denied that he gave Richardson consent to search his person. It was the other officer who ordered him out of the car. After defendant exited the vehicle, Richardson patted him down, stuck his hand in defendant's pockets, pulled out a bag, drew his weapon, and ordered defendant to "hit" the ground. The other officer placed him in handcuffs. When Richardson initially approached the driver after the stop, the conversation lasted about five minutes. The officer went back to his squad car for about another five minutes. The field sobriety test of the driver took about another six or seven minutes. After defendant was ordered out of the car, he was standing on the side of the road about another three or four minutes.

On cross-examination, defendant testified that Richardson did not ask him for permission to search him. Defendant asked Richardson what he was doing, and the officer said he was doing a routine patdown.

In granting defendant's motion, the trial court explained that the officer had no indication of suspicious activity on the part of defendant and no reason to detain the vehicle or the occupants after the officer determined that only a warning would be given for obstruction violations. The court noted that the officer stated defendant consented to being searched but that defendant stated he did not consent to the search. The court found defendant's testimony more credible under the circumstances.

On appeal, the State argues only that the trial court erred in granting defendant's motion because it misapplied our supreme court's decision in *People v. Brownlee*, 186 Ill. 2d 501 (1999). There our supreme court upheld the trial court's ruling that the officers' continued detention of a driver and passengers after the initial purpose of the traffic stop was concluded violated the fourth amendment where there was no reasonable suspicion of illegal activity and that the constitutional violation invalidated the subsequent consent obtained by the police to search the car. Here, although the State attempts to make strained distinctions between the circumstances of *Brownlee* and the case at bar, we find *Brownlee* applicable, and we affirm on that basis. Furthermore, the State has failed to address the factual issue of whether defendant voluntarily consented to the search. We affirm the court's decision on the additional ground that there was no voluntary consent to the search.

■ In reviewing a trial court's decision regarding the lawfulness of a search or seizure, when the trial court's ruling involves factual determinations and credibility assessments, the decision will be reversed on appeal only if it is manifestly erroneous. *People v. Buss*, 187

Ill. 2d 144, 204 (1999). A trial court's determination regarding factual matters, including the reasonable inferences to be drawn from the witnesses' testimony, is entitled to deference by the reviewing court. *People v. Sanchez*, 292 Ill. App. 3d 763, 768 (1997). However, where there is no factual or credibility dispute and the question involves only the application of the law to the undisputed facts, our standard of review is *de novo. People v. Sims*, 192 Ill. 2d 592, 615 (2000); *Buss*, 187 Ill. 2d at 205; see *Sanchez*, 292 Ill. App. 3d at 768 (trial court's ultimate determination regarding reasonableness of warrantless search is subject to *de novo* review).

Because the issue of whether the continued detention and search of defendant's person presents essentially a legal question regarding the application of *Brownlee* to the undisputed facts, we review this question *de novo.* In *Brownlee*, two officers stopped a car for a traffic violation. The driver and front seat passenger were young adult males. Two young female passengers, one of whom was the defendant, sat in the backseat. The officers obtained the identities of all four occupants and checked for outstanding warrants, but found none. The officers decided not to issue any traffic citations, but nevertheless asked the driver for permission to search the car. Officer Guerrero returned the license and insurance card to the driver and explained that no citations would be issued. After a pause of a couple of minutes, Guerrero asked the driver if he could search the car. The driver asked whether he had a choice in the matter, and Guerrero replied that he had a choice but the officer was "asking" if he could search the vehicle. The driver stepped out of the car and said it was "okay" to search. 186 Ill. 2d at 506.

The three passengers were ordered out of the car. Guerrero found an open beer bottle on the backseat floor and two "blunts" (hollowed-out cigars filled with marijuana). Officer Maxey testified that the defendant denied having any knowledge of the blunts. The other female passenger told Maxey that the blunts belonged to the men but all four individuals had been smoking them. The officers noted that the blunts were not burned. The police believed that they had probable cause to arrest all four individuals and searched the defendant incident to her arrest. On her person they found a controlled substance that formed the basis of the charge against her.

The trial court ruled that the initial traffic stop was permissible because of the observed traffic violation. However, the trial court quashed the defendant's arrest and suppressed the evidence against her. The trial court observed that the matter of the traffic violation had been "cleared" and there was nothing else to create a reasonable or articulable suspicion of any other illegal activity, notwithstanding

the consent. 186 Ill. 2d at 509. The trial court agreed with the defendant that, after the officers determined not to issue any traffic citations, their continued detention of the car's occupants violated the defendant's constitutional rights and the driver's consent to search the car was tainted as the product of the unlawful detention. The appellate court reversed the circuit court, but our supreme court ultimately reversed the appellate court's judgment and affirmed the trial court's judgment.

The issue before the supreme court was whether the trial court was correct in concluding that, after the initial purpose for the traffic stop was concluded (because the officer returned the license and insurance card and explained that no citations would be issued), the officers' continued detention of the car and its occupants, without probable cause or reasonable suspicion of criminal activity, violated the defendant's constitutional rights and thereby invalidated the subsequent consent to search the car and her resulting arrest. *Brownlee*, 186 Ill. 2d at 516.

■ The supreme court noted that a limited investigatory or *Terry* stop is permissible only where there is a reasonable suspicion, based upon specific and articulable facts, that the person has committed or is about to commit a crime. *Brownlee*, 186 Ill. 2d at 518. The court also observed that two inquiries "for deciding whether an officer's investigative detention is reasonable [are]: (1) 'whether the officer's action was justified at its inception' and (2) 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Brownlee*, 186 Ill. 2d at 518-19, quoting *Terry v. Ohio*, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879 (1968). Quoting various passages from *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (plurality opinion), our supreme court observed that (1) an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop; (2) the State bears the burden of showing that a seizure based on reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure; and (3) where an officer's confinement of a person goes beyond the limited restraints of a *Terry* investigative stop, a subsequent consent to search may be found to be tainted by the illegality. *Brownlee*, 186 Ill. 2d at 519; see *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Our supreme court determined that the facts, including the officers' show of authority, demonstrated that the driver did not believe he was free to leave and was uncertain whether he had a choice in consenting to the search and that the driver and his passengers, including the defendant, were subjected to seizure.

The *Brownlee* court concluded that the State failed to show that the officers' continued detention of the car's occupants was in any way reasonable or objectively justified, that the detention was sufficiently limited in scope or duration to satisfy the conditions of a *Terry* stop, or that the evidence should not have been suppressed as the tainted fruit of the officers' illegal detention. The State thereby waived any challenge to the trial court's ruling, and the supreme court sustained the trial court's judgment. *Brownlee*, 186 Ill. 2d at 521.

■ The circumstances in this case come well within the ambit of *Brownlee*. Here, Richardson stopped the vehicle ostensibly for regulatory violations. Richardson testified that the initial stop and warrant check took 12 or 13 minutes—not counting the field sobriety test of the driver or the further detention of the passengers. According to defendant's testimony, the initial detention, warrant check, and field sobriety test took up to 17 minutes and the further detention at the side of the road took another 3 to 4 minutes. When the officer's initial suspicions were dispelled and he issued only a warning to the driver, the encounter should have ended. The initial reason for the investigative stop had come to an end. The officer testified that defendant was not doing anything unusual during this time.

■ The usual traffic stop is considered a *Terry* stop that contemplates only a brief intrusion, as minimal as possible, to verify information or ascertain whether criminal activity has taken place. *People v. Sweborg*, 293 Ill. App. 3d 298, 302 (1997). A stop for a minor traffic violation does not justify a general search of the vehicle (*People v. Smith*, 315 Ill. App. 3d 772, 775 (2000)) and, without more, does not provide a reasonable basis for believing that an occupant is armed and dangerous (*Sweborg*, 293 Ill. App. 3d at 304). An officer's authority to investigate may not become a subterfuge to obtain other evidence merely based on the officer's suspicion or curiosity. *Smith*, 315 Ill. App. 3d at 776. However, when an officer has properly stopped a vehicle for a minor traffic violation and reasonably believes that his safety is in danger, he may conduct a limited search or frisk of an individual for weapons, but the sole purpose of the search is to protect the officer, not to gather evidence. *Smith*, 315 Ill. App. 3d at 776; *Sweborg*, 293 Ill. App. 3d at 304.

■ In this case, there was no issue presented regarding the officer's safety, and the further detention of the driver and defendant to conduct searches has no legal or factual support. Even though Richardson stated defendant became nervous at the time he was asked to consent to the search, this, without more, does not provide a basis for the search of his person. *Smith*, 315 Ill. App. 3d at 778. Based on *Brownlee*, we hold that, when the officer concluded the traffic stop and

did not issue any citations but merely issued warnings, the stop should have ended and the further detention of the driver and the passengers became unlawful and invalidated any subsequent consent to the searches.

However, to the extent that the State even suggests that the detention was so brief that defendant's consent should provide a basis for the search, we shall also address the question of voluntary consent. Since the facts regarding the voluntariness of the consent were conflicting and the court chose to believe the defendant, we apply the deferential manifest error standard of review. The issue whether consent was voluntary presents a question of fact that must be determined from the totality of the circumstances. *People v. Perez*, 288 Ill. App. 3d 1037, 1046 (1997). The State bears the burden to show by a preponderance of the evidence that the consent was voluntarily given. *People v. Casazza*, 144 Ill. 2d 414, 417 (1991).

A warrantless search is *per se* unreasonable unless it falls within one of the recognized exceptions to the warrant requirement, such as consent, and for consent to be voluntary, it must be shown that it was not the result of duress or coercion, express or implied, but was freely given. See *People v. Harrell*, 226 Ill. App. 3d 866, 871-72 (1992).

In the present case, although the officer stated that defendant consented to the search of his person, the request to search came only after a traffic stop, an identification and warrant check, which were favorable to the occupants, the further detention of the driver for a field sobriety test, which the driver passed, a further request to search the vehicle, and the apparent arrival on the scene of a second officer. The passengers were ordered to step out of the vehicle and were further detained. Defendant denied that he consented to the search but also could reasonably have believed that he would not be free to go unless and until the search was performed. Even if defendant submitted to the search, it does not appear that consent was voluntarily given. The trial court found that defendant had no reason to consent to a search, especially if he was carrying contraband, and the court chose to believe him. It is obvious that the extended detention and requests for consent to search became an impermissible "fishing expedition" to satisfy the unarticulated suspicions or curiosity of the officer. We cannot say that the trial court's decision was against the manifest weight of the evidence or was manifestly erroneous.

For the reasons stated, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

GEIGER and BYRNE, JJ., concur.