THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN A. GONZALEZ, Defendant-Appellee.

Second District   No. 2—99—1349

Opinion filed July 30, 2001.

O'MALLEY, J., dissenting.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, and Margaret M. Healy, Assistant State's Attorney, of counsel), for the People.

No brief filed for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, John A. Gonzalez, was charged with possession of a controlled substance (720 ILCS 570/402(c) (West 1998)). The State appeals an order granting defendant's motion to quash his arrest and suppress evidence (see 145 Ill. 2d R. 604(a)(1)). We affirm.

Defendant and Officer John McCarthy testified at the hearing on defendant's motion. Defendant gave the following testimony. On December 9, 1998, he was riding in the front passenger seat of a car driven by his friend. The car was pulled over for having no front license plate. Officer McCarthy and another officer asked the driver for identification and proof of insurance. The driver had no proof of insurance, so the officers ordered him out of the car. As defendant sat in the car, Officer McCarthy asked defendant for identification. Defendant complied and gave Officer McCarthy a traffic ticket, and the officer returned to his squad car. Officer McCarthy wore street clothes, his gun was not drawn, and his manner was not belligerent or abusive.

Defendant testified that about 5 to 10 minutes later Officer McCarthy returned and asked defendant to step out of the car, and defendant complied. After defendant stepped out of the car, Officer McCarthy asked defendant to put out the cigarette he was smoking. Defendant responded by asking Officer McCarthy if he was under arrest. Officer McCarthy told defendant that he was not under arrest. Defendant further testified: "So I told him, no, I wasn't going to put my cigarette out." Officer McCarthy told defendant that he had to search defendant "for his own safety and whatnot. And I asked him again, am I under arrest. He told me no. *** He told me because I was arrested before he wanted to search me to be safe." Defendant testified that "[Officer McCarthy] asked if he could search me. I said, no, you cannot." However, defendant opened up his jacket and patted himself down to show Officer McCarthy that he had no weapons. Officer McCarthy then placed his hand on defendant's shoulder and guided defendant to the back of the car, where Officer McCarthy searched defendant. Officer McCarthy felt a small bulge in defendant's pocket and asked what it was. In response, defendant pulled another traffic ticket out of his pocket; the ticket unfolded and cocaine fell out. Officer McCarthy then arrested defendant.

Officer McCarthy testified as follows. On December 9, 1998, he and Officer Lee were on routine patrol and stopped a car for having no front license plate. As Officer Lee spoke to the driver, Officer McCarthy approached defendant and requested identification. Defendant was simply sitting in the car. Officer McCarthy knew of no outstanding warrants to arrest or search defendant and never saw a weapon on defendant nor did he see defendant committing any crime. After de-

fendant gave Officer McCarthy a traffic ticket, the officer returned to his squad car and ran a computer check that revealed that defendant was a gang member, was on parole, and had a lengthy criminal history.

Officer McCarthy testified that he then returned to the stopped car. Because of the information obtained during the computer check, Officer McCarthy was concerned that defendant might have a weapon. Officer McCarthy asked defendant to step outside. Officer McCarthy testified at this point that defendant was not free to leave. Defendant complied with Officer McCarthy's directive. Officer McCarthy asked defendant if he had anything he should not have. Defendant replied "no" and opened the front of his jacket as if to show that he was not hiding anything. Officer McCarthy stated that he asked defendant if he could search defendant and defendant replied "yes." As Officer McCarthy patted down defendant, he felt a bulge in defendant's pocket and asked what it was. Defendant replied that it was a traffic ticket, reached into his pocket, and pulled the folded ticket out. As he opened the ticket, cocaine fell out. Officer McCarthy arrested defendant. Officer McCarthy estimated that perhaps five or six minutes passed between the traffic stop and his search of defendant.

The trial court noted that there was some conflicting testimony surrounding the circumstances of the search but that Officer McCarthy was credible. The court determined that the initial traffic stop was valid. However, Officer McCarthy did not have a lawful basis to ask defendant for identification because Officer McCarthy did not suspect defendant of any criminal activity. Therefore, the search was tainted. Relying on our opinion in *People v. Branch*, 295 Ill. App. 3d 110 (1998), the trial court granted defendant's motion to suppress. Citing *People v. Smith*, 266 Ill. App. 3d 362 (1994), the State moved to reconsider, asserting that Officer McCarthy's request for identification did not violate the fourth amendment. The trial court denied the motion. The State filed the instant appeal.

On appeal, the State argues that Officer McCarthy's request for identification from defendant, who was riding in a car that was stopped for a traffic violation, did not violate defendant's fourth amendment rights. Therefore, the State argues that the trial court erred by granting defendant's motion to suppress evidence and quash the arrest. We disagree with the State.

●1 In reviewing a ruling on a motion to suppress and motion to quash arrest, we must accept the trial court's factual findings unless they are against the manifest weight of the evidence. See *People v. Lockett*, 311 Ill. App. 3d 661, 666 (2000). If we accept the trial court's findings, we review *de novo* whether suppression is warranted under these facts. See *People v. Gonzalez*, 184 Ill. 2d 402, 411-12 (1998).

Here, the trial court found, in part, that Officer McCarthy was credible and that he had no reasonable suspicion of criminal activity at any time during the encounter with defendant. After reviewing the record, we do not believe these findings are against the manifest weight of the evidence. Accordingly, we will review the trial court's decision to grant defendant's motion to suppress *de novo*. See *Gonzalez*, 184 Ill. 2d at 412.

●2 The fourth amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, article I, section 6, of the 1970 Illinois Constitution states, "The people shall have the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, seizures, invasions of privacy[,] or interceptions of communications by eavesdropping devices or other means." Ill. Const. 1970, art. I, § 6. The fourth amendment of the United States Constitution sets the minimum rights a person shall receive against unreasonable government search and seizure. However, the Illinois Constitution gives greater protection against unreasonable searches and seizures than does the United States Constitution. *People v. McGee*, 268 Ill. App. 3d 32, 40-41 (1994).

●3 For fourth amendment purposes, there are three tiers of lawful police-citizen encounters: (1) the arrest of a citizen supported by probable cause; (2) a *Terry* stop or brief seizure of a person, which must be supported by a reasonable and articulable suspicion of criminal activity; and (3) an encounter commonly known as the community caretaking or public safety function, which involves no coercion or detention and thus does not involve a "seizure." *People v. Leifker*, 307 Ill. App. 3d 25, 28 (1999).

●4 Generally, a stop for a minor traffic violation is considered a *Terry* stop (*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). *People v. Smith*, 315 Ill. App. 3d 772, 775 (2000). A *Terry* stop is a seizure that involves only a brief detention, stopping short of a traditional arrest. *People v. Brownlee*, 186 Ill. 2d 501, 518 (1999). To comport with the requirements of the fourth amendment of our federal constitution and article I, section 6, of our Illinois Constitution, *Terry* stops, or short investigatory stops, are permissible only if there is a reasonable suspicion "that the person has committed, or is about to commit, a crime." *Brownlee*, 186 Ill. 2d at 518. When considering whether a seizure was reasonable, a court must balance the public interest against the person's right to be free from arbitrary interference from police officers. *Gonzalez*, 184 Ill. 2d at 413. A *Terry* stop is deemed reasonable only if the detention was (1) justified at its inception; and (2) reasonably related in scope to the circumstances that justified the detention in the first place. *Brownlee*, 186 Ill. 2d at 518-19.

●5 When applying these standards, Illinois courts have held that, in most cases, when a police officer stops a driver pursuant to a lawful traffic stop, the officer may request a driver's license from the driver and run a quick warrant check. *People v. Branch*, 295 Ill. App. 3d 110, 113 (1998). However, generally, a police officer may not ask for and run a warrant check on the identification of a passenger, without reasonably suspecting the passenger of criminal activity. *Branch*, 295 Ill. App. 3d at 114-15; *People v. Jennings*, 185 Ill. App. 3d 164, 169 (1989). Such a request can render the otherwise lawful detention of the driver an unlawful seizure of the passenger. See *Branch*, 295 Ill. App. 3d at 114-15. Further, subsequent "consent" to search may be tainted by an unlawful detention, and the evidence obtained from the search may be suppressed. *Brownlee*, 186 Ill. 2d at 521.

For example, in *Branch*, an officer properly stopped a car the defendant was driving. Although the officer who effectuated that stop did not suspect the two passengers of criminal activity, he asked both the defendant and the two passengers, one of whom was Acevedo, for identification. After a computer check disclosed an outstanding warrant for Acevedo's arrest, the officer arrested Acevedo and searched the car, finding evidence that led to the defendant's arrest. *Branch*, 295 Ill. App. 3d at 111. At trial, the trial court granted the defendant/driver's motion and suppressed the evidence discovered during the searches. *Branch*, 295 Ill. App. 3d at 110-11. The State appealed. This court affirmed the trial court, holding that the initial stop of the vehicle and request for identification and computer check on the defendant/driver were lawful. *Branch*, 295 Ill. App. 3d at 113, 114. However, the officer lacked the authority to ask Acevedo, a passenger, for identification and to run a computer check, because the officer did not reasonably suspect the passenger of criminal activity. *Branch*, 295 Ill. App. 3d at 114. Therefore, the evidence obtained as a result of the unlawful detention and improper search was properly suppressed. *Branch*, 295 Ill. App. 3d at 115.

In *Brownlee*, our supreme court upheld the suppression of evidence obtained after a passenger was detained without a reasonable suspicion of criminal activity and later searched. *Brownlee*, 186 Ill. 2d 501. After observing traffic violations, two officers stopped a car containing four occupants, two males in the front and two females, including the defendant, in the back. *Brownlee*, 186 Ill. 2d at 506. The officers obtained the identities of all four occupants and checked for outstanding warrants. None were found, and the officers decided not to issue any citations. *Brownlee*, 186 Ill. 2d at 506. An officer asked the driver if he could search the car. The driver asked if he had a choice, and the officer told the driver that he did. The driver got out of

the car and said "[o]kay, you can search." *Brownlee*, 186 Ill. 2d at 506. The passengers were ordered out of the car, and the car was searched, revealing marijuana. *Brownlee*, 186 Ill. 2d at 507. The officer arrested all four individuals, including the defendant, and searched the defendant, incident to her arrest. The search of the defendant revealed cocaine. *Brownlee*, 186 Ill. 2d at 507. The trial court granted the defendant's motion to suppress the drugs obtained during the search of the defendant. The State appealed. Our supreme court affirmed the trial court's suppression of the evidence, holding that the initial stop was valid, but the continued detention of the defendant was unlawful because the officers did not have a reasonable suspicion of criminal conduct. *Brownlee*, 186 Ill. 2d at 521. The court further affirmed the trial court's determination that the subsequent "consent" to search was tainted by the illegality of the detention. *Brownlee*, 186 Ill. 2d at 521.

Recently, in *People v. Robinson*, 322 Ill. App. 3d 169 (2001), this court affirmed a trial court's suppression of evidence obtained during a search of a passenger of a car that was lawfully stopped. The officer stopped the vehicle and asked both the driver and a passenger, Ignacio Rosario, for identification. The officer knew the other passenger, the defendant. The officer ran computer checks on all three individuals which showed no warrants. The check took about 10 minutes. After detecting an odor of alcohol, he had the driver perform a field sobriety test, which the driver passed. The officer issued a warning to the driver and then asked if he could search the car. The owner of the car, Rosario, told the officer to "go ahead." The officer then searched Rosario and then asked the defendant if he could be searched. The defendant said "go ahead," and the officer discovered a baggie containing a white powdery substance. The officer then arrested the defendant for possession of drugs. The trial court suppressed the evidence, and the State appealed. Affirming the trial court's suppression, this court held that the defendant was unlawfully detained and that any consent given was tainted by the unlawful detention. *Robinson*, 322 Ill. App. 3d at 176. Further, the search of the defendant was unlawful because the officer did not believe his safety was in danger. *Robinson*, 322 Ill. App. 3d at 175.

•6 These cases support the trial court's decision here. The driver in this case, like the driver in *Branch*, was lawfully stopped and asked for identification. The officer then asked defendant for identification even though the officer admitted that he had no reasonable suspicion of criminal activity on the part of defendant. Therefore, like the officer in *Branch*, the officer in this case lacked authority to ask defendant for identification. In addition, the officer in this case had no authority

to search defendant. The officer explained that he searched defendant because he was afraid that defendant might have a weapon. However, the officer based his concern only on defendant's criminal history obtained from the unlawful computer check. The officer testified that at no time did he have a reasonable suspicion of criminal activity or see a weapon, and defendant did nothing unusual. Therefore, absent the information obtained from the unlawful computer check, Officer McCarthy had no lawful basis to search defendant. In addition, like the "consent" given in *Brownlee* and *Robinson*, any "consent" given by defendant in this case was tainted by the illegal detention. Therefore, the trial court properly granted defendant's motion to suppress.

Contrary to the State's assertion, the encounter at issue here was not merely one involving the community caretaking function of the police. It is well settled that such an encounter does not implicate the fourth amendment and does not require any legal justification. *People v. Smith*, 266 Ill. App. 3d 362, 364 (1994). However, the State fails to recognize that the community caretaking encounter typically involves the safety of persons or property. See, *e.g.*, *People v. Murray*, 137 Ill. 2d 382 (1990) (two officers approached the defendant and asked for identification after the officer observed the defendant slumped over the wheel of a parked vehicle); *People v. Carlson*, 307 Ill. App. 3d 77, 79 (1999) (an officer asked the defendant to step out of his car after the officer found the defendant lying in his car on the side of the road); *People v. Ciesler*, 304 Ill. App. 3d 465, 467, 472-73 (1999) (an officer approached the defendant to assist him because he was slumped over the steering wheel of a truck that was parked on the shoulder of a ramp with its engine running); *People v. Crocker*, 267 Ill. App. 3d 343 (1994) (an officer stopped the defendant to ask if a nearby abandoned car belonged to the defendant and to see if the defendant needed a ride); *People v. Quigley*, 226 Ill. App. 3d 598 (1992) (officers stopped the defendant after they observed him get out of his car at an intersection and yell at the driver of another car).

There is nothing in the record in this case that indicates that Officer McCarthy asked defendant for his identification because he was concerned for the safety of a person or property. Rather, Officer McCarthy stated that defendant was doing nothing unusual and Officer McCarthy did not suspect any criminal activity.

Further, when a reasonable person would not feel free to decline the request or leave the scene, the officer is no longer acting in his community caretaking function. *People v. Leifker*, 307 Ill. App. 3d 25, 28 (1999). Implicit in the trial court's finding is that defendant did not feel free to decline Officer McCarthy's "request" for identification and

did not feel free to leave. We recognize that the trial court found Officer McCarthy's testimony to be credible; however, the court's implicit finding is not contradicted by Officer McCarthy's version of events. We also note that, despite the fact that Officer McCarthy did not suspect criminal conduct or fear for his safety at the time, defendant was not free to walk away from the scene. Our supreme court held in *Gonzalez*, 184 Ill. 2d 402, that an officer may lawfully order a passenger to remain at the scene of a traffic stop, absent a suspicion of criminal activity or a belief that he is at risk of harm. *Gonzalez*, 184 Ill. 2d at 418. Thus, we cannot say that the trial court's implicit finding that a reasonable person would not have felt free to refuse to comply or free to leave is against the manifest weight of the evidence. Therefore, we determine that the trial court properly ruled that the encounter constituted a seizure requiring legal justification. Accordingly, the trial court properly granted defendant's motion to quash his arrest and suppress evidence.

In addition, contrary to the State's assertion, we are not bound to follow *People v. Smith*, 266 Ill. App. 3d 362 (1994). The *Smith* court held that a police officer's request for the defendant's identification after a lawful stop of a vehicle in which the defendant was a passenger did not constitute a seizure in violation of the fourth amendment. *Smith*, 266 Ill. App. 3d at 367. Although the facts in *Smith* are similar to those presented here, we believe that *Smith* was incorrectly decided. The *Smith* court relied on a United States Supreme Court case (*Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991)) that is easily distinguishable from *Smith* and the case at bar. *Smith*, 266 Ill. App. 3d at 366-67. In *Bostick*, the Supreme Court held that a police officer's questioning of a defendant who was a passenger on a public bus was not a seizure for fourth amendment purposes. The *Smith* court found the facts in Smith "analytically indistinguishable from *Bostick*." *Smith*, 266 Ill. App. 3d at 366. However, unlike the defendant in *Smith*, the defendant in *Bostick* was informed by officers that he had the right to refuse to cooperate. *Bostick*, 501 U.S. at 432, 115 L. Ed. 2d at 397, 111 S. Ct. at 2385. There is nothing in *Smith* or this case to indicate that the defendants were told that they could refuse to cooperate. Thus, *Smith* mistakenly relied on *Bostick*. In addition, the procedural posture of this case is different than that of *Smith*. The *Smith* court was asked to review the trial court's *denial* of the defendant's motion to suppress based on its finding that a reasonable person would have felt free to refuse to comply. See *Smith*, 266 Ill. App. 3d at 368. In this case, we are asked to review the trial court's *granting* of defendant's motion to suppress based on its implicit finding that a reasonable person would not have

felt free to refuse to comply. We cannot say that its findings are against the manifest weight of the evidence. Thus, *Smith* is not controlling here.

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

*Affirmed.*

GEIGER J., concurs.

JUSTICE O'MALLEY, dissenting:

None of the cases cited by the majority supports its rule that "generally, a police officer may not ask for and run a warrant check on the identification of a passenger [of a lawfully stopped automobile], without reasonably suspecting the passenger of criminal activity" (324 Ill. App. 3d at 20). In my mind, *People v. Branch*, 295 Ill. App. 3d 110 (1998), the majority's principal authority for its decision, was an unwarranted departure from a long line of this court's cases. In *Branch*, the court held that, because the officer did not have reason to suspect the passenger of criminal activity, he "did not have the authority to *request* an ID from the *** passenger." (Emphasis added.) *Branch*, 295 Ill. App. 3d at 114. The foundations for that holding are suspect. The court explained that the State's argument that the officer had authority to *request* the passenger's identification was "directly contrary" to *People v. Jennings*, 185 Ill. App. 3d 164 (1989), where the court held that, because the officer who stopped the car in which the defendant was a passenger did not have reason to suspect the defendant of criminal activity, the officer therefore had no authority to *demand* the defendant's identification. *Branch*, 295 Ill. App. 3d at 114, citing *Jennings*, 185 Ill. App. 3d at 169.

That *Branch* blurred the distinction between demand and request is not surprising because *Jennings* did, too. The facts as recited in *Jennings* do not indicate whether the officer requested or demanded the defendant's identification. Responding to the State's argument that the officer "had a lawful right to *ask for* and run a warrant check on defendant's driver's license," the *Jennings* court held that the officer "did not possess the authority to *demand* the production of defendant's driver's license absent proof that defendant was driving the vehicle." (Emphasis added.) *Jennings*, 185 Ill. App. 3d at 169, citing *People v. Francis*, 4 Ill. App. 3d 65 (1971). Two lines later in the opinion, the court asserted that the officer "did not have the authority to *request* defendant's license." (Emphasis added.) *Jennings*, 185 Ill. App. 3d at 169. I do not think the attentive reader can tell whether *Jennings*'s use of "demand" and "request" interchangeably was due

to an unstated assumption that no legal difference exists or to mere carelessness. Faced with this imprecision, the *Branch* court should have been more circumspect in citing *Jennings* as authority.

*Francis,* the sole authority cited by *Jennings,* was inapposite; the issue there was whether an individual had to be operating a motor vehicle before an officer could rightfully require him to produce a driver's license under section 6—112 of the Driver Licensing Law (Ill. Rev. Stat. 1969, ch. 95½, par. 6—112 (now 625 ILCS 5/6—112 (West 1998))), which requires that every licensed driver retain his license in his immediate possession while operating a motor vehicle. *Francis,* 4 Ill. App. 3d at 66. *Francis* has no relevance to cases in which police obtain an individual's license for purposes of a criminal history check.

*Branch* simply ignored *People v. Smith,* 266 Ill. App. 3d 362 (1994), and its distinction between a *request* for identification and a *demand* for identification. The majority follows *Branch* in failing to address the validity of this distinction. Instead, the majority dismisses *Smith* as factually distinguishable from the case upon which *Smith* chiefly relies, *Florida v. Bostick,* 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991). The majority notes that the defendant in *Bostick,* unlike the defendant in *Smith* and the present case, was told that he had the right of refusing to comply with the officers' requests. Although the Court in *Bostick* mentioned that this advisement was given (see *Bostick,* 501 U.S. at 432, 115 L. Ed. 2d at 397, 111 S. Ct. at 2385), nowhere did the Court explain the significance of that advisement, much less state that such an advisement is necessary for a request to remain noncoercive. The Court did observe, however, that "no seizure occurs when police ask questions of an individual [or] ask to examine the individual's identification ***—so long as the officers do not convey a message that compliance with their requests is required." *Bostick,* 501 U.S. at 437, 115 L. Ed 2d at 400, 111 S. Ct. at 2388.

Before *Branch,* this court agreed with this statement of the law. There is a reason why *Branch* could cite only a Fourth District case (*Jennings*) to support its holding, for this court had long been of the mind that a police officer's request of a private citizen does not constitute a seizure *per se.* See, *e.g., People v. Cole,* 256 Ill. App. 3d 590, 593-95 (1994) (no seizure when "police merely approach an individual in a public place and ask him if he is willing to answer questions or put questions to him if he is willing to listen"); *People v. Graves,* 196 Ill. App. 3d 273, 278 (1990) (declining "to hold, as a bright-line rule, that [a] deputy's mere running of a driver's license check, without more, [rises] to the level of a seizure"). In this, we are aligned with our supreme court. See *People v. Murray,* 137 Ill. 2d 382, 391,

393 (1990) ("the mere approaching and questioning of a person seated in a parked vehicle does not constitute a seizure," but "[t]he encounter may be characterized as a seizure if the officer orders, rather than requests, that the occupant open the door or exit the car"). The majority offers no reason why, when the police encounter an individual who is sitting in the passenger seat of a car that they have stopped as opposed to standing on a public sidewalk, an officer's requests of that individual constitute a seizure *per se*.

The remaining cases cited by the majority, *People v. Brownlee*, 186 Ill. 2d 501 (1999), and *People v. Robinson*, 322 Ill. App. 3d 169 (2001), lend no support to the majority's holding. Neither case addressed the lawfulness of a police request for identification from a passenger of a car stopped for a traffic violation; rather, both address the lawfulness of events occurring *after* such requests occurred. In both *Brownlee* and *Robinson*, the issue was whether the police, having stopped a car for suspected traffic violations, had a basis for continuing to detain the occupants after the police ran warrant checks on their identities and informed them that they would not be cited for traffic violations. *Brownlee*, 186 Ill. 2d at 517; *Robinson*, 322 Ill. App. 3d at 172. In both cases, the court held that this continued detention exceeded the scope of the traffic stop and was not justified independently of the grounds for the stop. *Brownlee*, 186 Ill. 2d at 520-21; *Robinson*, 322 Ill. App. 3d at 175. In neither case was the lawfulness of the officer's request for the occupants' identification and the subsequent warrant check at issue. Defendant does not claim that the traffic stop was illicitly prolonged *after* the officer obtained and ran his identification, but such a claim is the only claim that *Brownlee* and *Robinson* would support.