THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BETTY LaPOINT, Defendant-Appellant.

Third District   No. 3—02—1002

Opinion filed October 29, 2004.

SCHMIDT, J., dissenting.

Thomas C. Brandstrader, of Highwood, for appellant.

Joseph Hettel, State's Attorney, of Ottawa (Lawrence M. Bauer and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Betty LaPoint was charged with cannabis trafficking (720 ILCS 550/5.1(a) (West 2002)) and unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(g) (West 2002)). She filed a motion to suppress the cannabis, alleging that it was obtained through an unreasonable search and seizure in violation of the federal and state constitutions (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6). The judge denied both her motion to suppress and her subsequent motion to reconsider. The matter then proceeded to a jury trial where LaPoint

was found guilty on both charges. The judge sentenced her to concurrent prison terms of 12 years (trafficking) and 8 years (possession).

In this appeal, LaPoint claims that: (1) the judge erred in denying her motion to suppress, and (2) the State's evidence at trial was insufficient to prove her guilty beyond a reasonable doubt. We agree with her first claim and reverse her convictions on that basis.

## BACKGROUND

The sole witness at the suppression hearing was Steve Eller, a La Salle County sheriff's deputy. Eller testified that on April 17, 2000, at about 3:20 a.m., he was driving eastbound on Interstate 80 and observed two vehicles traveling eastbound in front of him. The lead vehicle, a blue Saturn with New York license plates, was weaving inside its lane of traffic. The second vehicle moved into the adjacent lane to pass the Saturn, and the Saturn drifted over and nearly hit the second vehicle. Then the Saturn continued weaving and drifted onto the shoulder of the road. Eller activated his overhead lights at that time.

The Saturn pulled over and stopped in a prompt and safe manner. Eller exited his squad car and approached the Saturn on foot. When he looked inside the Saturn, he did not see any contraband in plain view, but he noticed a passenger lying on the backseat. He spoke with the driver (LaPoint) and announced why he made the stop. LaPoint explained that she was tired and looking for somewhere to stop and rest. Eller asked for her driver's license and vehicle registration papers, and she provided the documents. The registration papers showed that the Saturn had been rented by a woman named Mary Bailey. Eller questioned LaPoint about the vehicle's ownership, and the information she provided was consistent with the information on the rental papers.

Eller also asked LaPoint where she was traveling from. Although LaPoint was driving eastbound, she said she was traveling from New York. Eller clarified his question by asking where she was coming from "at this present time." LaPoint exhibited difficulty naming a location, so Eller asker her to simply name the state. He mentioned Idaho, and she said she was not traveling from Idaho. Then he mentioned Iowa, and she confirmed that she was traveling from Iowa.

Next, Eller questioned LaPoint about why she went to Iowa in the first place. She said she was transporting one of Mary Bailey's friends. Eller asked why Bailey had not taken the friend herself, and LaPoint explained that Bailey and the friend had been in an argument. Eller asked LaPoint how long she had stayed in Iowa, and she said two days. He asked if she had ever been arrested or been in trouble, and

she said no. He also asked if she had any illegal items in the vehicle, and she said no. Eller testified that LaPoint appeared to be nervous during his questioning, but he acknowledged that motorists tend to be "slightly nervous" during traffic stops.

After questioning LaPoint, Eller returned to his squad car and ran checks on her driver's license, criminal history, and the rental papers. He discovered that the driver's license and rental agreement were valid. The criminal history check revealed that LaPoint had been arrested numerous times, but that no warrants were outstanding for her arrest. During the stop, Eller did not know how old LaPoint's prior arrests were; he later discovered that they were "relatively old" (one was 20 years old). He ultimately decided to give LaPoint a warning ticket for driving outside her lane of traffic. After preparing the ticket, he exited his squad car and reapproached the Saturn while holding LaPoint's driver's license, the rental papers, and the warning ticket.

When Eller reached the Saturn, he had LaPoint exit and "step to the back of the vehicle." At the suppression hearing, defense counsel asked Eller if he had any reason for removing LaPoint from the vehicle. Eller responded: "No, just—just standard. I do that a lot of times." The following colloquy occurred regarding what happened next:

"Q. And when she stepped around to the back of the vehicle, did you hand her that paperwork[?]

A. I believe I asked her some other questions before I—

Q. What questions were those?

A. I don't recall exactly what I asked her at that point.

Q. Well, at that point when you asked Miss LaPoint to get out of her car and return to the back of the vehicle, she wasn't going to have to post bond or anything, was she?

A. No.

Q. She wasn't going into custody?

A. No, sir.

Q. You didn't have a warrant for her?

A. No, sir.

Q. And other than the traffic violations, you had not observed any criminal activity on Miss LaPoint's part?

A. No, sir."

After asking LaPoint the additional questions, Eller explained the warning ticket and then returned her paperwork. He testified: "As I was returning her paperwork to her, I asked her for consent to search the vehicle." At the suppression hearing, Eller acknowledged that LaPoint was entitled to depart when he made his request, but he did not advise her that she could withhold consent. He testified that LaPoint granted his request and that he asked her to sign a written

consent form. LaPoint refused to sign the form, stating that Mary Bailey would not want her to sign anything. Then Eller asked if he still had verbal consent to search the vehicle. According to his testimony, LaPoint said "yes, go ahead."

Eller retrieved a K-9 from his squad car and walked around the Saturn. When the dog alerted on the Saturn, Eller took the keys from the ignition and opened the trunk. Inside the trunk he observed a large, open duffel bag covered with a white towel. He moved the towel and observed numerous packages wrapped in plastic with a white material beneath them. He ultimately discovered that the duffel bag contained cannabis.

The circuit judge found that Eller had a legitimate basis for initiating the traffic stop and that he became suspicious when LaPoint gave unclear responses and lied about her prior arrests. Then the judge stated:

> "And, here again, you know, the cases basically talk about continued detention, that you can't keep people after the time to conduct an investigation. At the time [Eller] walked up with the warning ticket, I don't know that he had a basis to hold [LaPoint]. He couldn't say, you wait here, we are going to investigate you. I think that would have been wrong. She would have been free to go and if she would have said, no, I don't want to consent, I want to leave, he would have been pretty much out of luck. But I don't know that we've gotten to the stage where he can't ask her for permission to consent for a search right at the same time that he's handing her the paperwork. I mean, we are not talking about a big delay here. I think that's what the cases are talking about, unlawful detention so that police can do investigations. ***
>
> *** I think this is the facts [sic] of the case that makes this case different. The dog is there, it's right on the scene in his car. We are not going to wait any time for the dog here."

The judge also noted that once the dog alerted on the Saturn, Eller had probable cause and no longer needed LaPoint's consent to search. Thus, the judge denied the motion to suppress. LaPoint filed a motion to reconsider, and the judge denied that motion as well— reiterating his finding that Eller did not delay LaPoint in acquiring consent to search. In support of his ruling, the judge specifically observed that Eller's request for consent "was done simultaneously" with the return of LaPoint's documents. The judge stated: "I believe there's no delay, and I believe the police have the right to simultaneously ask for consent."

The matter then proceeded to a jury trial, where Eller offered testimony similar to his testimony from the suppression hearing. The

jury found LaPoint guilty as charged. Following her sentencing hearing, she filed this appeal.

## ANALYSIS

### 1. Denial of Motion to Suppress

Both the federal and state constitutions require that searches and seizures be reasonable. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A warrantless search is *per se* unreasonable unless it falls within one of the recognized exceptions to the warrant requirement—such as consent. *People v. Robinson*, 322 Ill. App. 3d 169 (2001). Consent is not valid unless it is voluntary, and in order for consent to be voluntary, it must be freely given without duress or coercion (express or implied). *Robinson*, 322 Ill. App. 3d 169. The inquiry for operationalizing this standard is whether, in light of all the circumstances surrounding the officer's request for consent, a reasonable person in the defendant's position would have felt free to leave. See *People v. Brownlee*, 186 Ill. 2d 501 (1999). If the answer to this inquiry is yes, the defendant's consent is deemed voluntary (see, *e.g.*, *People v. Phillips*, 264 Ill. App. 3d 213 (1994)); but if the answer is no, the defendant's consent is deemed involuntary and will not justify a search (see, *e.g.*, *People v. Goeking*, 335 Ill. App. 3d 321 (2002)).

In the instant case, the parties do not raise any factual or credibility disputes. Thus, our review is *de novo* because the issue involves only application of the law to the undisputed facts. *People v. White*, 331 Ill. App. 3d 22 (2002).

Since Eller's legal basis for searching the Saturn was LaPoint's verbal consent, we must determine whether that consent was voluntary. The above-cited principles illustrate that the judge's analysis during the suppression hearing was incomplete. The judge seems to have focused his analysis decisively on the question of whether Eller delayed LaPoint after returning her documents. However, the applicable standard focuses on the totality of the circumstances surrounding the officer's request for consent. The presence or absence of a delay is merely one relevant factor in this analysis.

Regardless of any suspicions Eller may have developed while questioning LaPoint, he ultimately decided to merely issue a warning ticket for her traffic infractions. He acknowledged that he had no evidence of any other criminal activity on her part. Yet, when he reapproached the Saturn, he did not return LaPoint's documents and issue the ticket. Instead, he had LaPoint exit the Saturn and accompany him to the rear of the vehicle. He admitted that he had no reason for taking this action and that he could have finished his business the usual way (with LaPoint seated in the vehicle).

LaPoint was clearly not free to leave when Eller reapproached the Saturn because her documents had not been returned. Eller manifested this lack of freedom by removing her from the Saturn, thus separating her from her mode of departure. T. e record clearly shows that he subjected LaPoint to additional questioning after walking back to the Saturn with the warning ticket. The circuit judge's observation regarding LaPoint's status at that moment bears repeating: "At the time [Eller] walked up with the warning ticket, I don't know that he had a basis to hold [LaPoint]. He couldn't say, you wait here, we are going to investigate you. I think that would have been wrong." As it turned out, Eller did not even bother with telling LaPoint to wait for further investigation—he simply launched directly into such investigation. He did not return LaPoint's documents, thereby technically concluding the mandatory portion of the stop, until *after* this second round of questions. Moreover, he injected his request for consent to search into the seamless transition between mandatory and "consensual" interaction. Although trained legal professionals might detect such subtle transitions, we do not believe a reasonable person in LaPoint's position could have done so.

The instant facts scarcely afford an opportunity for a reasonable person to even contemplate being free to leave. At the very moment when such freedom arose in theory, Eller posed a diversionary question about searching the vehicle. The question hearkened back to his earlier query about whether LaPoint had any illegal items in the Saturn (a query that occurred when she was clearly not free to leave). Most significantly, LaPoint was still separated from her mode of departure, and Eller's question about searching the Saturn came on the heels of a second round of investigatory questions. When Eller brought up the subject of a search, he did nothing to indicate that LaPoint could return to the vehicle. Neither did he inform LaPoint that she was free to leave despite his continued queries.[1]

Under the totality of these circumstances, the most we could expect from a reasonable person is considerable doubt about whether she could disregard Eller's request and depart. Simply put, the aggregate effect of Eller's actions inhibited the type of feeling necessary

---

[1]We realize that in *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996), the United States Supreme Court held that police officers are not constitutionally required to provide such information. Nevertheless, the Court stated that a motorist's knowledge of the right to refuse consent is a factor to consider in the totality-of-the-circumstances analysis. Thus, the fact that Eller did not advise LaPoint of her right to decline his request and depart is relevant.

for voluntary consent. This clear statement disproves the dissent's insinuation that our holding rests solely on the fact that Eller removed LaPoint from the Saturn.

Neither does our holding absolutely bar police officers from requesting consent to search vehicles after concluding the mandatory portion of traffic stops. However, we agree with the observation of the Appellate Court, Second District, that permissible instances of such action "would be rare." *Goeking*, 335 Ill. App. 3d at 324 (observing that "[i]t is difficult to imagine many cases in which a motorist would voluntarily remain at the scene of a traffic stop to engage the officer in casual conversation").

For the foregoing reasons, we conclude that the search of the Saturn was unconstitutional and that LaPoint's motion to suppress should have been granted.

### 2. Reasonable Doubt

Our conclusion on the suppression issue obviates the need to address LaPoint's reasonable doubt claim. Since her convictions cannot stand without the illegally seized evidence, we reverse them outright.

### CONCLUSION

The judgment of the La Salle County circuit court is reversed, and LaPoint's convictions are vacated.

Reversed and vacated.

BARRY, J., concurs.

JUSTICE SCHMIDT, dissenting:

We all know that two wrongs do not make a right. Here, the majority concludes that under the "totality of the circumstances," four rights make a wrong. 353 Ill. App. 3d at 333.

As the majority points out, after Deputy Eller asked defendant to step to the rear of her car, he advised her that he was issuing a warning ticket and then, as he handed her the ticket, her driver's license and the car rental papers, he asked for permission to search her car. She gave permission. The deputy then asked her to sign a consent to search form. The defendant refused. The deputy then asked whether he still had her oral permission to search the car, and defendant once again orally consented to the search.

The only issue really is whether LaPoint's consent to search the vehicle was voluntary or, as the majority finds, somehow coerced. The majority uses phrases such as: "he injected his request for consent into the seamless transition between mandatory and 'consensual'

interaction" and "[a]t the very moment when such freedom arose in theory, Eller posed a *diversionary question* about searching the vehicle." (Emphasis added.) 353 Ill. App. 3d at 333. While this is wonderful prose that gives the deputy's actions a sinister flavor, I confess that I have no idea what it means.

Federal and state constitutions serve to protect an individual only from *unreasonable* searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The Illinois Supreme Court has consistently held that a search and seizure analysis is the same under the fourth amendment (U.S. Const., amend. IV) or the Illinois Constitution (Ill. Const. 1970, art. I, § 6). See *Gonzalez*, 204 Ill. 2d at 224, 789 N.E.2d at 264. While the fourth amendment does proscribe unreasonable searches and seizures, "it does not proscribe voluntary cooperation." *Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 401, 111 S. Ct. 2382, 2389 (1991). Consent is valid when it is voluntary, meaning that is freely given without duress or coercion. *People v. Robinson*, 322 Ill. App. 3d 169 (2001).

The United States Supreme Court has held that simply asking questions of a citizen is not a violation of the fourth amendment when the citizen is willing to listen. *United States v. Drayton*, 536 U.S. 194, 153 L. Ed. 2d 242, 122 S. Ct. 2105 (2002). Police may also generally request consent to search, even when officers have no basis for suspecting criminal activity. *Florida v. Bostick*, 501 U.S. 429, 434-35, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991).

The majority holds that defendant could not have felt free to refuse cooperation and depart. Yet, there was no evidence of coercion by the police officer. Examples of circumstances that might indicate a person was not free to leave include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). Further, the deputy did not threaten (1) to arrest the defendant, (2) to further detain the defendant while awaiting a canine, or (3) to impound the vehicle if consent was refused. See *People v. Sesmas*, 227 Ill. App. 3d 1040, 1046-47, 591 N.E.2d 918 (1992); *People v. DeLisle*, 104 Ill. App. 3d 297, 432 N.E.2d 954 (1982) (holding that consent may be involuntary where defendant must choose between consenting and being arrested).

In *Ohio v. Robinette*, the Supreme Court stated that once a motor vehicle has lawfully been detained for a traffic violation, police officers may order a driver to get out of the vehicle without violating the fourth amendment's proscription against unreasonable searches and

seizures. *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996). Any motive the deputy may have had for removing the defendant from her vehicle is of no consequence to the fourth amendment analysis. *Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 97-98, 116 S. Ct. 1769, 1774 (1996). Despite the Supreme Court's holdings, the majority suggests that removing the motorist from the driver's seat, although a totally constitutional act as announced in *Robinette*, had "separat[ed] [LaPoint] from her mode of departure" and makes any consent thereafter obtained involuntary. 353 Ill. App. 3d at 333.

The majority also takes notice of the fact that Eller did not advise the defendant that she was free to leave the traffic stop and also that she need not grant consent. There is no obligation on the officer to advise that the traffic stop is over and the motorist is free to leave prior to requesting permission to search. *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996). Neither is the officer required to advise a citizen of the right to refuse consent. *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996). The majority acknowledges *Ohio v. Robinette* and then ignores it. The operative facts in this case are virtually identical to those in *Robinette* and there the Supreme Court found no constitutional violation.

The only remaining issue relating to voluntariness that the majority addresses is the length of time between the completion of the traffic stop and the deputy's request for consent. The majority's conclusions, laid out alongside the Illinois Supreme Court's decision in *People v. Brownlee*, 186 Ill. 2d 501 (1999), leave police with virtually no opportunity to ever obtain consent to search a vehicle on a traffic stop. The *Brownlee* court acknowledged "that an officer is always free to request permission to search." 186 Ill. 2d at 515. The court, however, found the problem was not the officer's requested permission to search the car, but "that the officers unconstitutionally detained the car and its occupants [for two minutes] before requesting permission to search the car and after the conclusion of the traffic stop." (Emphasis omitted.) 186 Ill. 2d at 515. Here, the majority claims that the request for voluntary consent to search the vehicle was constitutionally offensive because the deputy first requested permission to search at the *instant* the traffic stop was completed.

If two minutes is too long, and a few seconds is not long enough, we have effectively stripped the police of Illinois of one of their most effective tools in ferreting out criminal activity. In fact, since this case is decided under the United States Constitution, the majority's decision applies to police everywhere. See *Ohio v. Robinette*, 519 U.S. at 43, 136 L. Ed. 2d at 357, 117 S. Ct. at 423 (Ginsberg, J., concurring.)

On the facts of the case, there is little question as to the voluntariness of consent. Upon a request by Deputy Eller, LaPoint gave verbal consent. In fact, after defendant refused to sign a written consent to search, Eller asked whether he still had defendant's oral consent to search. This question implied that defendant had the same right to refuse oral consent as she had to refuse to give written consent. There is no evidence of any threat or suggestion the Eller would search with or without the consent.

In conclusion: (1) a police officer may order a driver to get out of the vehicle under circumstances virtually identical to those here (*Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996)); (2) there is no obligation on the officer to advise that the traffic stop is over and the motorist is free to leave prior to requesting permission to search (*Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996)); (3) an officer is not required to advise a citizen of his right to refuse consent (*Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996)); and (4) a police officer may not unreasonably detain a motorist after the conclusion of a traffic stop before requesting authority to search (*People v. Brownlee*, 186 Ill. 2d 501, 713 N.E.2d 556 (1999)). The police officer's actions here were in compliance with each of the above-listed rules of law. I respectfully dissent.