THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES E. LEIFKER, Defendant-Appellee.

Second District    No. 2—98—0881

Opinion filed September 9, 1999.

Charles W. Roddick, State's Attorney of Galena (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph E. Nack, of Nack, Richardson, Kelly & Kurt, of Galena, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals from the circuit court's order granting the motion of defendant, James E. Leifker, to suppress evidence. See 145 Ill. 2d R. 604(a)(1). Defendant was charged with the unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)), a Class A misdemeanor. The State argues that the trial court's decision to grant defendant's motion was manifestly erroneous. See *People v. James*, 163 Ill. 2d 302, 310 (1994). We affirm.

Defendant was stopped twice by Deputy Steven O'Connell of the Jo Daviess County sheriff's department as defendant was walking home on a road outside of Scales Mound, Illinois, shortly after midnight on February 12, 1998. The record shows that, in the first instance, the officer got out of the squad car and asked defendant for his name and birth date and asked a couple of questions about what defendant was doing. Defendant gave him the correct information and answered questions about his conduct. O'Connell wrote down the identification information. He ascertained defendant's name and where he lived. O'Connell testified that he then told defendant that he could go, and defendant resumed walking home. O'Connell testified that he ran a computer check, but, in relaying the identification information, he was mistaken about the date of birth defendant had given him. A dispatch informed the officer that the date of birth the officer had given was incorrect and the correct information had been found in the system. The date of birth was the same as the one given by defendant. The dispatch report also noted that defendant had had a prior arrest for a drug paraphernalia offense.

O'Connell further testified that he decided to stop defendant a second time to check the birth date once more because the officer was under the impression that defendant had lied and had given the wrong date of birth. Upon being stopped a second time, defendant again immediately gave the officer the correct date of birth. The officer then asked defendant if he had been arrested before, and defendant said he had been arrested for a drug paraphernalia offense. The officer asked defendant if he had any drugs on him and whether he minded having his pockets searched. Defendant was hesitant. When defendant asked the officer why he wanted to search, the officer replied that he was "very curious."

O'Connell testified that he wanted to check defendant's pockets with his permission and defendant said "go ahead." The officer began to check defendant's pockets, but defendant stopped him before he

finished. According to the officer, defendant then told the officer he had a pipe in his pocket and gave it to the officer voluntarily. Defendant was arrested. The dispatch report did not show that there was any active warrant outstanding or any reason to believe defendant was dangerous. The officer did not fear for his own safety. Prior to the stops, the officer did not observe defendant committing any violations of the law, but he believed that defendant had a duty to give him correct information.

Defendant testified that he gave the officer the correct information when he was first stopped and the officer wrote it down. When defendant was stopped the second time, the officer again asked for his birth date (which he gave correctly) and whether he had been arrested before. Defendant said he had been arrested for a drug paraphernalia offense. When the officer asked whether he could search defendant, defendant asked whether he was in some sort of trouble. The officer asked him to place his hands on the hood of the car and began to search him. Defendant denied ever giving the officer consent to search him and denied voluntarily producing any drug paraphernalia.

In a detailed ruling, the trial court determined that the inquiry should have ended after defendant was first stopped and he gave the correct information and explained his conduct. There was nothing to indicate that a crime was committed or was about to be committed. Without reaching the issue of the credibility of the witnesses regarding the consent to the search, the court concluded that the second stop and the officer's propounding further questions violated the constitutional protection afforded defendant against unreasonable searches and seizures. The court noted that the officer already knew who defendant was and where he lived.

The court found that there was "no reason whatever to disbelieve what the Defendant told him." It was only after the officer learned that defendant had a prior arrest that the officer's curiosity was stirred to the point that he decided to make a further inquiry with a hope of discovering evidence of an offense without any indication of any criminal activity on the part of defendant. The court concluded there was no reasonable basis for a further intrusion and granted defendant's motion to suppress.

■ The State correctly points out that a trial court's ruling on a motion to quash arrest and suppress evidence will not be reversed unless it is manifestly erroneous. *People v. James*, 163 Ill. 2d 302, 310 (1994). Citing *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983), the State argues that the second "encounter" was justified as a check on the information or as a consensual police-citizen encounter. We agree with the trial court that the second encounter was actually an unconstitutional, unlawful seizure of defendant.

■ For fourth amendment purposes, there are theoretically three tiers of lawful police-citizen encounters: (1) the arrest of a citizen supported by probable cause; (2) a *Terry* stop or brief seizure of a person that must be supported by a reasonable and articulable suspicion of criminal activity; and (3) an encounter commonly known as the community caretaking function or public safety function; this tier involves no coercion or detention and thus does not involve a "seizure." See *People v. Murray*, 137 Ill. 2d 382, 387-88 (1990) (caretaking function encompasses police investigations of accidents in which there is no claim of criminal liability); *People v. Hinton*, 249 Ill. App. 3d 713, 716-17 (1993) (caretaking function is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute).

■ In the present case, the first stop arguably fell within the public safety function. However, once this first encounter was concluded, the second "encounter" constituted a *Terry* stop or seizure of defendant without the requisite reasonable and articulable suspicion necessary to support it. A seizure occurs whenever a police officer accosts an individual and restrains his freedom to walk away. *People v. Parker*, 284 Ill. App. 3d 860, 862 (1996). The appropriate test for a seizure is whether a reasonable person would feel free to decline the officer's request for the encounter. *City of Highland Park v. Lee*, 291 Ill. App. 3d 48, 52 (1997). Once a seizure has occurred, an officer is no longer acting in his community caretaking function, even if his original intention had nothing to do with the detection or investigation of a crime. *Lee*, 291 Ill. App. 3d at 54.

■ Defendant gave correct information upon being stopped by the officer in each instance. There is no competent evidence that defendant was engaging in criminal activity before the second stop and search. He was walking home on a road at night and was curbed by an officer driving a squad car—not once, but twice. In the face of this persistent show of police authority and interrogation by a law enforcement officer, we do not believe that a reasonable person would have felt free to walk away. The second stop was a seizure for fourth amendment purposes.

On appeal, the State does not maintain that the stop was supported by a reasonable and articulable suspicion that a crime was committed but rather argues that the encounter was consensual. See *People v. Fox*, 203 Ill. App. 3d 742, 746 (1990) (to support *Terry* stop, officer must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion). However, the officer here was clearly acting on mere curiosity and suspicion in pursuing and stopping defendant a second

time. The court did not find justified the officer's claim that he was checking defendant's birth date information as he already had the correct information. The officer detained defendant for the purpose of detecting or acquiring evidence related to a possible criminal offense, but the officer did not possess beforehand the articulable and reasonable suspicion of criminal activity necessary for a lawful *Terry* stop.

The community caretaking function is divorced from the officer's function in the detection, investigation, or acquisition of evidence of a crime. See *Hinton*, 249 Ill. App. 3d at 717. After the first stop was concluded, any further intrusion must be governed by a standard of reasonableness; the officer's action must be justified at its inception and be reasonably related in scope to the circumstances justifying the interference in the first place. *People v. Fox*, 203 Ill. App. 3d at 746-47 (second stop based on mere curiosity or suspicion was unjustified). Because the second stop of defendant was unreasonable and legally unjustified, the trial court's decision to suppress the evidence obtained as a result of this nonconsensual stop is not manifestly erroneous. See *People v. Brownlee*, 186 Ill. 2d 501, 519-21 (1999) (State failed to show that product of consensual search should not have been suppressed as the tainted fruit of illegal, continued detention of passenger after initial traffic stop; suppression order affirmed). Since the second stop was unlawful from its inception, we need not reach the issue whether the resulting search was consensual.

The judgment of the circuit court of Jo Daviess County is affirmed.

Affirmed.

INGLIS and RAPP, JJ., concur.