THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GABRIEL H. CORDERO, Defendant-Appellant.

Second District   No. 2—03—0702

Opinion filed June 10, 2005.

O'MALLEY, P.J., specially concurring.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KAPALA delivered the opinion of the court:

Defendant, Gabriel H. Cordero, appeals his convictions of driving under the influence (DUI) (625 ILCS 5/11—501(a)(2) (West 2000)) and operating an uninsured vehicle (625 ILCS 5/3—707 (West 2000)). Defendant moved the trial court to quash his arrest and suppress evidence, contending that he had been illegally seized by a Lake County deputy sheriff. The trial court denied defendant's motion. Thereafter, defendant was convicted of the above-mentioned charges, following a stipulated bench trial. On appeal, defendant contends that he was illegally seized. We agree and reverse.

On September 30, 2001, defendant was arrested for DUI. On April 21, 2002, defendant filed a motion to quash arrest and suppress evidence. The following facts are taken from the parties' agreed statement of facts, as the hearing on the motion to quash and suppress was not transcribed.

Deputy Quinones of the Lake County sheriff's office testified that she had been employed by that office for approximately 2½ years. On September 30, 2001, at about 2:42 a.m., she was patrolling near Luke's Restaurant on Route 43 in Knollwood. As she passed the restaurant, heading south, she observed a vehicle parked in the parking lot. Deputy Quinones took special notice of the vehicle because the restaurant had been closed for many hours, the parking lot was not lit, and she was "suspicious" that the vehicle might have been involved in criminal activity such as robbery. Deputy Quinones executed a U-turn and, as she entered the Luke's parking lot, the vehicle began to leave the parking lot. Deputy Quinones then executed a traffic stop of the vehicle as it pulled into the street. Deputy Quinones also testified that she had no indication of illegal activity other than the late hour, the darkened parking lot, the fact that the restaurant had been closed for a long time, and her observation that the car was parked outside of the parking space lines.

The trial court (Judge Patrick N. Lawler) denied defendant's mo-

tion to quash and suppress. It reasoned that, had defendant remained stationary and not left the parking lot, then the stop would have been improper. However, because of the late hour, the fact that all of the businesses served by the Luke's parking lot were closed, and defendant's "furtive" and sudden departure upon the approach of a police car, the trial court held that Deputy Quinones' actions satisfied the reasonable suspicion standard and fell within her community caretaking function.[1]

On May 30, 2002, defendant filed a motion to reconsider the ruling. The motion to reconsider alleged that the trial court erred in determining both that Deputy Quinones' conduct satisfied the reasonable suspicion standard and that the encounter could be considered to be justified under the community caretaking function of the police. On June 26, 2002, the trial court heard argument and denied the motion to reconsider. Immediately thereafter, on June 26, 2002, defendant filed a notice of appeal. On October 15, 2002, defendant filed a motion for summary remand and construction of a record, pointing out that he had filed an unauthorized interlocutory appeal. On October 31, 2002, this court granted defendant's motion for summary remand and dismissed the appeal.

After the cause was remanded, no alternative record of the suppression hearing was prepared. On January 21, 2003, however, defendant filed another motion to reconsider the ruling on the motion to quash and suppress. Defendant argued that the stop performed by Deputy Quinones could not be justified as an exercise of the deputy's community caretaking function as a police officer. On April 1, 2003, the State moved to dismiss the second motion to reconsider as untimely.

While the record is somewhat unclear regarding who ruled on the motions and when the rulings were made, the trial court denied both the motion to dismiss and the second motion to reconsider. Following the denial of his motion to reconsider, defendant submitted to a stipulated bench trial. By agreement of the parties, the trial court (this time, Judge Thomas R. Smoker) reviewed the police reports as the trial evidence, which included a narrative written by Deputy Quinones.

After the trial court read the police reports, it found defendant

---

[1]We note, however, that although the trial court's factual conclusions are entitled to deference, there is nothing in the record before us, either in the agreed statement of facts or in the police report that is part of this record, to support the trial court's conclusion that defendant's departure was furtive and sudden.

guilty of both DUI and driving an uninsured vehicle. The trial court proceeded immediately to sentencing and imposed concurrent terms of conditional discharge for the two convictions. The trial court also imposed a $750 fine for DUI and a $500 fine for operating an uninsured vehicle. Defendant did not file a posttrial motion, and he timely appeals.

On appeal, defendant raises three issues. First, defendant contends that the trial court's ruling on his motion to quash and suppress was erroneous. Specifically, defendant argues that Deputy Quinones' activation of her squad car's lights removed her actions from the realm of her community caretaking function, thereby requiring a reasonable suspicion in order to justify her stop of defendant. Defendant continues, asserting that the circumstances surrounding the stop did not give rise to the necessary reasonable suspicion to justify the stop. Second, defendant argues that his vehicle was registered in another state and, as the mandatory liability insurance requirement does not apply to an out-of-state vehicle, defendant's conviction of driving an uninsured vehicle must be reversed. Last, defendant argues that he is entitled to a $5 credit toward the fines imposed in this case because he spent a day in custody before his trial. The State confesses error on the second and third issues defendant raises. However, we need reach only defendant's first issue.

■ A trial court's ruling on a motion to suppress presents mixed questions of fact and law for a court of review to consider. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003). We will uphold on review the trial court's factual findings unless the findings are against the manifest weight of the evidence. *Gherna*, 203 Ill. 2d at 175. The reviewing court remains free, however, to assess the legal effect of the facts in relation to the applicable law and the issues presented, and to draw its own conclusions in deciding what relief should be granted. *Gherna*, 203 Ill. 2d at 175-76. Accordingly, the ultimate question of whether the evidence should be suppressed is reviewed *de novo. People v. Pitman*, 211 Ill. 2d 502, 512 (2004).

■ Before we analyze the correctness of the trial court's decision on the suppression motion, we note that the State claims that, because defendant did not file a posttrial motion, he has waived our review of this issue. We disagree. Defendant agreed to proceed by way of a stipulated bench trial in order to preserve the issue for our review. It would be illogical to find waiver where the State and defendant specifically agreed to a procedure designed to preserve the very issue raised here. Moreover, the State is estopped from raising waiver, having agreed to the process of a stipulated bench trial. See *People v. Todd*, 249 Ill. App. 3d 835, 840-41 (1993) (stipulated bench trial obviates

need for posttrial motion, effectively being a waiver of the requirement by the State). Accordingly, we decline the State's invitation to dispense with substantive review, and instead we reach the merits of defendant's argument.

■ Defendant notes that the trial court invoked community caretaking as an alternate justification for Deputy Quinones' stop of defendant's vehicle. Defendant argues that Deputy Quinones' show of authority in activating her lights, and her investigative purpose, remove this encounter from the realm of the community caretaking and public safety level of police-citizen encounters. Our supreme court has consistently defined the term "community caretaking function" as follows:

> "In essence, ' "[c]ommunity caretaking" is a label used to describe consensual police-citizen encounters that typically involve the safety of the public.' *People v. Gonzalez*, 204 Ill. 2d 220, 224 (2003) (declining to apply the label where no facts in record warranted its use); see also *People v. Gonzalez*, 324 Ill. App. 3d 15, 22 (2001) (collecting cases), *rev'd & remanded*, 204 Ill. 2d 220 (2003). Encounters falling within this tier do not involve coercion or detention, and therefore do not rise to the level of a fourth amendment seizure. *Murray*, 137 Ill. 2d at 387." *People v. Smith*, 214 Ill. 2d 338, 352 (2005).

There is nothing in this record to suggest that Deputy Quinones' stop of defendant's vehicle was justified on any basis other than reasonable suspicion. In fact, on appeal the State argues only reasonable suspicion as a justification for the stop.

■ We now turn to an analysis of whether the circumstances in this case gave rise to a reasonable and articulable suspicion of criminal activity. To justify a seizure on this ground, the officer "must be able to point to specific and articulable facts which, taken together with reasonable inferences therefrom, reasonably warrant the intrusion." *People v. Croft*, 346 Ill. App. 3d 669, 675 (2004). Whether there was a reasonable suspicion to justify a *Terry* stop is determined from the totality of the circumstances. *Croft*, 346 Ill. App. 3d at 675. Further, the situation encountered by the officer must be so far from the ordinary that any competent officer would be expected to act quickly. *Croft*, 346 Ill. App. 3d at 675.

■ In this case, Deputy Quinones was on routine patrol. She observed a car in the parking lot of a restaurant several hours after it had closed for the night. When she entered the parking lot, she observed the car begin to pull out of the parking lot. Deputy Quinones did not testify that she observed the car drive off rapidly or recklessly, but merely that it began to pull out, whereupon she activated her

lights and stopped it. Deputy Quinones did not testify that the area was a high-crime area or that she was aware of any recent criminal act occurring close to the restaurant. Instead, she indicated that the mere presence of the car in the parking lot after hours led her to suspect criminal activity. Under these circumstances, we hold that Deputy Quinones lacked a reasonable and articulable basis to justify her decision to perform a *Terry* stop of defendant. We note as well that these facts provide no basis for the trial court's determination that defendant acted in a "furtive" or sudden manner.

We find guidance in *Croft*. There, the defendant was observed walking his bicycle in a neighborhood in which, as the arresting officer had been informed, several recent episodes of vandalism had occurred. The officer did not respond to these earlier calls or have a description of a suspect. Instead, the officer merely considered the circumstances of a person walking a bicycle at night in that neighborhood to be "strange." *Croft*, 346 Ill. App. 3d at 675-76. This court held that the officer lacked reasonable suspicion to justify his *Terry* stop, noting especially that the mere fact that an individual is new to an area or looks "suspicious" or out of place, without more, is insufficient to establish reasonable suspicion. *Croft*, 346 Ill. App. 3d at 676. Likewise, here, while an occupied car in a parking lot after hours may be anomalous or "strange," without more, it cannot justify a *Terry* stop.

The State argues that parking after hours in front of a closed business may give rise to police concern, citing *People v. Rivera*, 304 Ill. App. 3d 124 (1999). We find *Rivera* distinguishable, however, because there, the police had a detailed tip that criminal activity would occur at a particular location, and there had been recent burglaries at that location. *Rivera*, 304 Ill. App. 3d at 127-28. Here, there was no tip and no testimony about crime in the area whatsoever.

The State also argues that defendant's action of driving away upon seeing Deputy Quinones' approach is sufficient to establish a reasonable suspicion. The State cites to *People v. Morris*, 209 Ill. 2d 137 (2004), to support its contention. We find *Morris* to be distinguishable. There, officers observed the defendant and his accomplice exit a car in a high auto-theft area. The defendant and his accomplice walked across the street in front of the officers' car, and when they noticed the police, they became visibly shocked and alarmed, and then immediately engaged in a headlong flight from the police. *Morris*, 209 Ill. 2d at 150. The supreme court held that, under these circumstances, the officers' pursuit of the defendant and his accomplice was justified. *Morris*, 209 Ill. 2d at 157. Here, by contrast, Deputy Quinones did not observe defendant engage in headlong flight upon sighting her; she observed only that he began to drive out of the parking lot. She further

did not observe defendant become nervous, startled, shocked, or scared upon first observing her. In addition, she did not testify that defendant was observed in a high-crime area or that any recent criminal acts had occurred in the area that would make defendant's presence of more concern. Moreover, we note that the mere fact that a vehicle drives away at the approach of a police car does not justify a *Terry* stop. *People v. Fox*, 97 Ill. App. 3d 58, 64 (1981). Accordingly, we hold that Deputy Quinones' stop of defendant was not justified by a reasonable and articulable suspicion. The trial court should have granted defendant's motion to quash arrest and suppress evidence. Because the State would be unable to prove defendant's guilt beyond a reasonable doubt without the fruits of the stop, we reverse outright defendant's convictions. See *People v. Kipfer*, 356 Ill. App. 3d 132 (2005).

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed.

Reversed.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE O'MALLEY, specially concurring:

I agree with the majority that the trial court erred in denying defendant's motion to quash arrest and suppress evidence. I write separately to explain why I believe a community caretaking or public safety doctrine exists in Illinois that allows seizures in cases where probable cause or reasonable and articulable suspicion of criminal activity is absent.

The trial court found that the seizure of defendant was justified as an exercise of community caretaking. Challenging this, defendant contends, essentially, that where an officer stops an individual for the purpose of investigating crime, that seizure is by definition not a community caretaking exercise. Because the State has not even attempted to justify the seizure on community caretaking grounds, the majority summarily disposes of the issue, finding "nothing in this record to suggest that Deputy Quinones' stop of defendant's vehicle was justified on any basis other than reasonable suspicion." 358 Ill. App. 3d at 125. In doing so, the majority quotes our supreme court's remark that "[e]ncounters falling within this tier do not involve coercion or detention, and therefore do not rise to the level of a fourth amendment seizure." *Smith*, 214 Ill. 2d at 352.

I am persuaded that Illinois law permits a warrantless seizure absent probable cause or a reasonable suspicion of criminal activity

where the seizure is justified as an exercise of community caretaking or public safety. Wherever an individual harbors a reasonable expectation of privacy, he is entitled to be free from governmental intrusion (*Terry v. Ohio*, 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899, 88 S. Ct. 1868, 1873 (1968)), but the parameters of this right are shaped by the context in which it is asserted, for "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222, 4 L. Ed. 2d 1669, 1680, 80 S. Ct. 1437, 1446 (1960). The reasonableness of a search or seizure depends upon balancing the public's interest against the individual's right to be free from arbitrary interference by law officers. *People v. Adams*, 293 Ill. App. 3d 180, 183 (1997). That said, however, searches and seizures conducted without warrants are presumed to be unreasonable (*Adams*, 293 Ill. App. 3d at 183), and fourth amendment jurisprudence has evolved to delineate the situations in which a warrantless search or seizure will be deemed to be reasonable (or at least not unreasonable). In an oft-cited passage in *People v. Murray*, 137 Ill. 2d 382, 387-88 (1990), the supreme court divided warrantless police-citizen searches or seizures into three tiers:

> "One tier involves an arrest of a citizen, which action must be supported by probable cause; otherwise, the fourth amendment prohibition against unreasonable seizures is violated. [Citation.] The next tier involves a so-called '*Terry*' stop, a brief seizure that must be supported by a reasonable suspicion of criminal activity to be within the acceptable fourth amendment boundaries. [Citation.] *The last tier involves no coercion or detention and therefore does not involve a seizure.* This tier is commonly known as the community caretaking function or public safety function. The Supreme Court elaborated on this level of police intrusion in *Terry* when it noted that 'obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' [*Terry v. Ohio*, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16]; see also [*Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 714-15, 93 S. Ct. 2523, 2528 (1973)] (local police officers 'frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute')." (Emphasis added.)

Here, the supreme court describes third-tier encounters as involving no coercion or detention and therefore not amounting to seizures.

This, taken alone, might imply that all seizures fall into the first two tiers and thus require probable cause or a *Terry* rationale, *viz.* a reasonable and articulable suspicion of criminal activity. However, as I develop in more detail below, the supreme court supplements this description of third-tier encounters with a quote from *Cady*, a case that dealt with coercive police action, namely, the search of a vehicle by police, which the Supreme Court found justified for public safety or community caretaking reasons, not on the basis of probable cause or a reasonable and articulable suspicion of criminal activity. See *Cady*, 413 U.S. at 446-47, 37 L. Ed. 2d at 718, 93 S. Ct. at 2530-31.

Just what, however, is a seizure justified on community caretaking grounds? The quintessential example would be a police officer physically restraining an inattentive pedestrian as he is about to step into the path of a moving vehicle. If, while holding the citizen, the officer feels what may be a gun, then the "plain feel" doctrine (see, *e.g.*, *People v. Blake*, 268 Ill. App. 3d 737, 739 (1995)) permits further investigation, and the officer need not justify the initial seizure by pointing to a reasonable and articulable suspicion of criminal activity, for the action was reasonable as an exercise of a peace officer's duty to protect the public. However, as I explain below, not all exercises of the community caretaking function need involve such an exigency as this hypothetical.

In suggesting that Deputy Quinones' investigative purpose in pursuing defendant served to transform their encounter into a seizure, defendant relies on past decisions of this district holding that the intentions of a police officer in initiating an encounter with a citizen determine whether that encounter amounts to a seizure. These authorities appear to assert that an encounter that the police initiate with a community caretaking purpose in mind is by definition not a seizure and that an exercise in crime detection or prevention is by definition a seizure. See, *e.g.*, *People v. Gonzalez*, 324 Ill. App. 3d 15, 22 (2001) ("[W]hen a reasonable person would not feel free to decline the request or leave the scene, the officer is no longer acting in his community caretaking function"), *rev'd on other grounds*, 204 Ill. 2d 220 (2003); *People v. Simac*, 321 Ill. App. 3d 1001, 1004 (2001) ("[I]t is axiomatic that when an individual is stopped by an officer for community caretaking, that individual has no obligation to submit to any police detention or questioning"); *People v. Leifker*, 307 Ill. App. 3d 25, 28 (1999) ("Once a seizure has occurred, an officer is no longer acting in his community caretaking function, even if his original intention had nothing to do with the detection or investigating of a crime"). This district is now officially at odds with itself on this point, for just recently we said that "the community caretaker exception allows an

actual seizure where the seizure is reasonable under certain circumstances." *People v. Luedemann*, 357 Ill. App. 3d 411, 419 (2005). In my view, *Luedemann* is right and *Gonzalez*, *Simac*, and *Leifker* are wrong. Whether an encounter amounts to a seizure is a function not of what role the police were playing in initiating the encounter with the citizen, but rather of what the officer does and what would be a reasonable person's reaction to the officer's conduct. As *Murray* itself said, quoting *Terry*, a seizure occurs " '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " (Emphasis added.) *Murray*, 137 Ill. 2d at 387-88, quoting *Terry*, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16. A restraint on liberty has occurred where " 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *People v. Brownlee*, 186 Ill. 2d 501, 517 (1999), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980).

My stance is not a novelty, I should emphasize, but rather finds support in federal and Illinois law. I begin by returning to *Murray*. There, the supreme court fleshed out the nature of third-tier encounters by quoting *Cady*'s description of community caretaking encounters. Notably, there is no suggestion in this description that all such encounters are by definition neither searches nor seizures. Indeed, *Cady* itself dealt with a search, that of the defendant's car, which was towed to a private lot after an accident involving the defendant. Because the police reasonably believed that the car, unattended in the private lot, contained a gun that might be taken by vandals, the Supreme Court held that a police search of the car for "the protection of the public" was permissible. *Cady*, 413 U.S. at 447, 37 L. Ed. 2d at 718, 93 S. Ct. at 2531. Placed in context, the *Cady* passage quoted in *Murray* reads:

> "Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 433, 37 L. Ed. 2d at 714-15, 93 S. Ct. at 2528.

Illinois courts, too, have found searches justified on grounds of public safety. In *People v. Ocon*, 221 Ill. App. 3d 311, 316 (1991), this district upheld the inventory search of a vehicle impounded after the defendant's arrest for driving without a license. We reasoned:

"The inventory of the contents of cars taken into police custody fulfills the community caretaking function of the police. [Citation.] Thus, inventory searches are a well-established exception to the warrant requirements of the fourth amendment. [Citation.] Probable cause, which is peculiar to criminal investigations, is unrelated and of no help in the reasonableness analysis required under the fourth amendment for routine administrative caretaking functions such as inventory searches. [Citation.] Rather, the reasonableness of such procedures arises from three legitimate objectives of inventory searches: to ascertain the extent and value of property needing protection while in police custody; to protect the police against claims or disputes over lost or stolen property; and to protect the police from potential danger emanating from items of personal property such as drugs or guns that may be found within a car. [Citations.]" *Ocon*, 221 Ill. App. 3d at 314-15.

Our supreme court has suggested that seizures of persons, too, may be justified on community caretaking or public safety grounds. In *People v. Gonzalez*, 204 Ill. 2d 220, 236-37 (2003), the supreme court held that the fourth amendment permitted an officer's request for identification from a passenger in a vehicle stopped for a traffic violation where the officer had no particular reason to suspect the passenger of criminal activity. The supreme court began its analysis by addressing the State's suggestion that the request for identification was reasonable as an exercise of community caretaking. The supreme court rejected the argument:

" 'Community caretaking' is a label used to describe consensual police-citizen encounters that typically involve the safety of the public. [Citations.] *This type of encounter involves no coercion or detention and thus requires no legal justification.* [Citation.] The State fails to explain in what way the request for identification from defendant served a public-safety function, and we glean no facts from the record which would warrant using the community-caretaking label in this case. Accordingly, we turn to an examination of the fourth amendment in the context of this traffic stop." (Emphasis added.) *Gonzalez*, 204 Ill. 2d at 224.

In the emphasized language, the supreme court appears to identify community caretaking functions with nonseizures. However, the court's subsequent analysis belies this impression. Notably, the police had already stopped the car in which the defendant was riding when they asked for his identification. If the supreme court believed that a

community caretaking exercise is simply a nonseizure, then the court would have disposed of the State's argument with the brief observation that the defendant had already been seized. Instead, however, the court looked to whether a credible community caretaking rationale existed for the request for identification. Finding no such rationale, the court proceeded to examine whether the request exceeded the bounds of the prior seizure. Implied in the court's analysis is the premise that seizures may be justified on community caretaking grounds (not that seizures are by definition not community caretaking exercises). As for the court's earlier remark that community caretaking encounters are nonseizures, one may take this as a thumbnail description of what most such encounters are like, that is, noncoercive. Based on its analysis, however, the court could not have been suggesting that a community caretaking exercise is by definition not a seizure.

Other jurisdictions have recognized that community caretaking concerns may justify seizures. See *Commonwealth v. Leonard*, 422 Mass. 504, 509, 663 N.E.2d 828, 831 (1996); *State v. Anderson*, 142 Wis. 2d 162, 417 N.W.2d 411 (1987); *Crauthers v. State*, 727 P.2d 9, 10-11 (Alaska App. 1986) ("We hold that Trooper Miller's action in engaging his emergency lights and contacting the defendant, following what he reasonably interpreted to be a request for assistance from the Crauthers vehicle, to be permissible under the 4th Amendment"); *State v. Chisholm*, 39 Wash. App. 864, 696 P.2d 41 (1985). In his treatise on the fourth amendment, Professor Wayne LaFave collects numerous state and federal cases recognizing that community caretaking or public safety grounds may justify seizures. See 4 W. LaFave, Search & Seizure § 9.2(b), at 292-96 (4th ed. 2004). In *Chisholm*, a particularly notable case, a police officer observed a pickup truck being driven while a hat was resting on top of it. The officer, who was driving an unmarked vehicle, could not get the truck to stop. He radioed ahead to a marked unit, who stopped the defendant to inform him about the hat. Upon approaching the car, the second officer observed an open can of beer in plain view. The court observed that standards such as probable cause and reasonable suspicion have no place where a stop is made to assist the driver of a vehicle. *Chisholm*, 39 Wash. App. at 866, 696 P.2d at 43. Instead, the court held that the reasonableness of the stop must be judged by balancing the "individual's interest in proceeding about his business unfettered by police interference" and "the public's interest in having police officers perform services in addition to the traditional enforcement of penal and regulatory laws." *Chisholm*, 39 Wash. App. at 867, 696 P.2d at 43. The court remanded for the trial court to apply the balancing test.

There are two further points that need to be clarified. First, whether a seizure is justified on community caretaking grounds does not depend on the officer's subjective purposes in effecting the seizure so long as his actions are objectively reasonable under the circumstances. Our district has in the past fallen into a subjectivist error. Thus, in *Simac* the court said: "The 'community caretaking' function *must be* completely divorced from any *initial suspicion* of criminal activity." (Emphasis added.) *Simac*, 321 Ill. App. 3d at 1004. In *People v. Croft*, 346 Ill. App. 3d 669, 673 (2004), we said: "An encounter is a function of community caretaking when an officer initiates it to check on an individual's well-being, *without initial thought of criminal activity*." (Emphasis added.) Elsewhere in *Croft* we again said: "When an officer questions an individual to check on his well-being, *without initial thought of criminal activity, he is within the purview of community caretaking*." (Emphasis added.) *Croft*, 346 Ill. App. 3d at 673. In our analysis in *Croft*, we reasoned:

"In the present case, we are not convinced that Officer Row's initial contact with defendant fell within the community caretaking function. Rather, Officer Row's testimony revealed that the purpose behind the encounter was investigative. Four thefts and two incidents of vandalism were reported the week before the encounter. According to Officer Row, seeing defendant push a bicycle while in dark pants at 11:15 p.m. 'just seemed strange' and was 'not a normal occurrence in that neighborhood.' Officer Row subsequently initiated the encounter 'to make sure that there was [*sic*] nothing else going to happen.'

\*\*\* Officer Row did not question defendant without initial suspicion of criminal activity. On the contrary, he questioned defendant to investigate his possible involvement in recent instances of theft and vandalism in the neighborhood. See *People v. Dent*, 343 Ill. App. 3d 567, 578 (2003) (police are not performing a community caretaking function when they are specifically investigating reports of criminal activity). Because Officer Row's purpose in questioning defendant was not totally divorced from detection, investigation, or acquisition of evidence, we cannot say that he was performing community caretaking." *Croft*, 346 Ill. App. 3d at 673-74.

We took this approach as recently as *Smith*. See *Smith*, 346 Ill. App. 3d at 162 ("Where, as here, police action is not motivated by crime detection or investigation but, rather, by an intent to render aid in an emergency situation, a suspicionless seizure of a person in furtherance of that goal does not violate the fourth amendment"). This approach is improper. The test for determining whether a seizure is justified is objective, the question being whether the facts and circumstances

known to the officer at the time of the seizure warranted his action. See *People v. Chavez*, 327 Ill. App. 3d 18, 31-32 (2001). An officer's testimony is relevant not for what it reveals about his inner thoughts, but for what it discloses about the objective circumstances of the encounter.

The error in *Croft* and these other cases is rooted in a misunderstanding of the language from *Cady*, quoted in *Murray*, that police officers " 'frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *Murray*, 137 Ill. 2d at 388, quoting *Cady*, 413 U.S. at 441, 37 L. Ed. 2d at 714-15, 93 S. Ct. at 2528. *Cady* was noting that many police-citizen encounters have nothing to do with crime, not requiring that they must have nothing to do with crime or else be illegal unless justified by probable cause or a reasonable and articulable suspicion of criminal activity. Notably, *Cady* did not require the police officers in that case to have had a certain subjective state of mind in order to justify their search of the defendant's car. And *Murray*, in quoting *Cady*, did not evince an intent other than to adopt *Cady*'s description. However, what *Cady* and *Murray* intended as descriptive has been transformed into a prescription in this district's cases, culminating in *Croft*'s subjectivist error.

Following the Washington case of *Chisholm*, I would hold that courts must determine whether a community caretaking or public safety rationale exists by balancing the "individual's interest in proceeding about his business unfettered by police interference" and "the public's interest in having police officers perform services in addition to the traditional enforcement of penal and regulatory laws." *Chisholm*, 39 Wash. App. at 867, 696 P.2d at 43. A seizure satisfies the fourth amendment's overarching requirement of "reasonableness" if warranted either by probable cause or a reasonable and articulable suspicion of criminal activity or by a reasonable concern for the welfare of the general public or individuals and their property. The latter criterion is stated at a high level of generality, for it subsumes a broad spectrum of encounters. In *Illinois v. Lidster*, 540 U.S. 419, 157 L. Ed. 2d 843, 124 S. Ct. 885 (2004), the United States Supreme Court reversed our supreme court's ruling that a roadblock set up by police to ask drivers if they had any information about a prior fatal traffic accident on that same road was unconstitutional (see *People v. Lidster*, 202 Ill. 2d 1 (2002)). The Supreme Court likened the roadblock to "certain other forms of police activity, say, crowd control or public safety." *Lidster*, 540 U.S. at 424-25, 157 L. Ed. 2d at 851, 124 S. Ct. at

889. The Supreme Court found the roadblock justified under the general criterion of reasonableness, which is determined by examining " 'the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.' " *Lidster*, 540 U.S. at 427, 157 L. Ed. 2d at 852, 124 S. Ct. at 890, quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362, 99 S. Ct. 2637, 2640 (1979). By its nature, the test leaves open the possibility that warrantless seizures not supported by probable cause or reasonable suspicion may be justified in all sorts of circumstances, emergency or otherwise. It is simply a matter of how the balance weighs on the unique facts of each case. A justifiable "community caretaking" or "public safety" or "public order" seizure may occur not just when police stop a car to insure the protection of an individual's property (as in *Chisholm*) but when they direct traffic or set up a roadblock or control crowds.

I need to stress, however, that a seizure is not reasonable under the fourth amendment unless wholly justifiable on grounds of probable cause or reasonable and articulable suspicion or on public safety or community caretaking grounds. That is, the State may not remedy an inadequate rationale on one ground by proffering an inadequate rationale on another ground, as if attempting to form a single whole out of two parts. Nor, however, may a seizure be deemed unreasonable where one rationale is nonexistent or lacking, if another is sufficient. Thus, a seizure otherwise justifiable on community caretaking grounds is not rendered unreasonable by the officer's inability to offer probable cause or a reasonable and articulable suspicion of criminal activity. Again, the test of whether a seizure is justified is objective, and so a seizure may not be deemed unreasonable based on the officer's subjective beliefs. For example, if an officer effects a seizure while believing, unreasonably, that criminal activity is afoot, the State is not precluded from proffering a community caretaking rationale for the officer's action based on an objective assessment of the circumstances.

Applying these principles to the present case, I see no basis in the record for the trial court's conclusion that the seizure in this case was justified on community caretaking grounds.