# Illinois Official Reports

## Appellate Court

*People v. Schronski*, 2014 IL App (3d) 120574

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HEATHER C. SCHRONSKI, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0574 |
| Filed | July 9, 2014 |
| Rehearing denied | August 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for obstructing identification arising from an incident in which the police, while investigating a report of a car sitting at a gas pump for 30 minutes, discovered defendant in the car and received identification information from defendant that was later found to belong to the actual owner of the vehicle, defendant's conviction was upheld, since the State's case-in-chief was established by evidence showing defendant was lawfully detained when she represented that the owner's identification information was hers and the closing argument implying that defendant testified falsely because the officer who could dispute her testimony had died was fair; however, the cause was remanded for a determination of the proper credit to be applied to defendant's fine for her presentence incarceration and for a hearing to determine whether defendant was able to pay the public defender fee. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 11-CM-242; the Hon. Susan S. Tungate, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on Appeal

Mario Kladis, of State Appellate Defender's Office, of Ottawa, for appellant.

Jamie J. Boyd, State's Attorney, of Kankakee (Robert M. Hansen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Carter and Wright concurred in the judgment and opinion.

## OPINION

¶ 1 After a jury trial, defendant, Heather C. Schronski, was found guilty of obstructing identification (720 ILCS 5/31-4.5(a)(2) (West 2010)). The trial court sentenced defendant to 10 weekends in the county jail and 2 years of conditional discharge. On appeal, defendant argues that: (1) the trial court erred in denying her motion for a directed verdict; (2) the State made several references to a deceased police officer in its closing argument that denied defendant a fair trial; (3) the court erroneously imposed a public defender fee without a hearing; and (4) the court did not award presentence incarceration credit. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                    FACTS

¶ 3 On March 14, 2011, defendant was charged by information with obstructing identification. On March 5, 2012, the case proceeded to a jury trial.

¶ 4 At trial, the State called Lieutenant David Morefield to testify. Morefield stated that he was an officer with the Bourbonnais police department. On March 13, 2011, around 11:30 p.m., the Bourbonnais police received a call from an attendant at Casey's General Store on 1401 North Convent Street. The attendant reported that a maroon Chevrolet had been sitting at a gas pump for approximately 30 minutes. The police were dispatched to the scene, and Officers Justin Honeycutt and Heather Wright were the first to arrive.

¶ 5 Morefield testified that when he arrived, Honeycutt had finished administering a field sobriety test to defendant. Honeycutt then approached Morefield's squad car and handed Morefield an Illinois identification card that had been issued to Bethany Wheeler. Morefield took the card and approached the Chevrolet. Morefield noticed that the occupant did not look like the individual depicted on the card and asked for the occupant's name. The occupant responded "you got my ID." Morefield identified the occupant as defendant. During the interaction that followed, defendant did not give Morefield her identification card, and Morefield later learned that Wheeler was the owner of the Chevrolet. A copy of Wheeler's identification card was admitted into evidence.

¶ 6 Defendant was eventually arrested and transported to the Bourbonnais police station. At the station, a dispatcher conducted an identification search in the Secretary of State database

for photographs of defendant and Wheeler. The dispatcher provided Morefield with an image of defendant's driver's license. A copy of defendant's driver's license was admitted into evidence.

¶ 7 Morefield also testified that Honeycutt and Wright were no longer employed by the Bourbonnais police department. Honeycutt was killed in a traffic accident in November 2011, and Wright took a position in Baltimore, Maryland.

¶ 8 At the conclusion of Morefield's testimony, the State rested. Defendant moved for a directed verdict, arguing in part, that defendant was not lawfully detained at the time she gave Wheeler's identification card to the police. The trial court denied the motion.

¶ 9 Following the court's ruling, the defense called defendant to testify. Defendant stated that on the date of the incident she worked a 12-hour shift as a forklift driver. After work, defendant went to Vernon Howard's home, where she had two or three drinks. She then went for a drive with Howard in a Chevrolet Impala. Defendant fell asleep in the car and awoke as Howard pulled into a gas station. Defendant fell back asleep at the gas station, and defendant eventually awoke to find that Howard was missing. Defendant went inside the gas station, and the attendant indicated that Howard was in the bathroom. Defendant returned to the car. While sitting in the car, Honeycutt approached and asked defendant to exit the vehicle. Defendant complied and walked to the rear of the vehicle, where she told Honeycutt her name. At that point, another car drove up quickly, and a woman jumped out screaming "[h]e's going to kill me." Honeycutt ordered defendant to return to her car and attended to the screaming woman.

¶ 10 Approximately 20 minutes later, Honeycutt returned to defendant's car and asked for defendant's identification. Defendant reported that she did not have her identification card. Honeycutt asked for defendant's name and identification information, and defendant responded that her name was Heather Schronski and provided her height, weight, and age. At that point, Honeycutt went to speak with Wright. When Honeycutt returned to the vehicle, defendant gave the officer her driver's license. Honeycutt asked for the vehicle registration. Defendant did not know where the information was located, but gave Honeycutt all of the documents from the glove box, including the vehicle owner's manual. Thereafter, Honeycutt placed defendant under arrest.

¶ 11 Defendant did not see Morefield until she was transported to the police station. Morefield asked for defendant's identification. Defendant responded that she had already given it to Honeycutt. Defendant told Morefield that she did not own the Chevrolet and that she was riding with a second person, who was in the gas station at the time that Honeycutt approached.

¶ 12 At the conclusion of defendant's testimony, the defense rested, and the State called Morefield in rebuttal. Morefield stated that while he was speaking to defendant on the night of the incident her eyes were bloodshot, her breath smelled of an alcoholic beverage, and her speech was slightly slurred. From these observations, Morefield opined that defendant was intoxicated. During the stop, Morefield did not notice another individual in the vehicle. Morefield restated that the only identification card he received belonged to the owner of the vehicle, Wheeler.

¶ 13 During the rebuttal argument, the State made four references to the absence of Honeycutt's testimony. The references included: (1) "It's amazing what this defendant can come up with when we have a deceased officer, amazing her story"; (2) "[W]here is the

driver? Where is this suspicious guy? Where is this male driver of the car? Amazing what you could come up when you have a deceased officer"; (3) "Well, I'll say it. I submit to you that the defendant is being untruthful; that it was the defendant who has come up with this crazy story to tell you today because we have a deceased officer"; and (4) "The defendant was lying to you when she sat up there under oath and told you that she gave an officer her driver's license but that's because we have a deceased officer." Defense counsel objected to the State's fourth reference to Honeycutt, and a sidebar was held. When proceedings resumed, the State continued its argument without further reference to Honeycutt, but stated in its conclusion that it was "confident that when [the jury] deliberate[s], you will find Heather Schronski–and she's smiling. This is ridiculous." Defense counsel objected, and the court sustained the objection.

¶ 14    During jury instructions, the court instructed the jury:

> "Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and to the reasonable inferences to be drawn from that evidence.
>
>    Neither opening statements nor closing arguments are evidence. And any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

¶ 15    The jury found defendant guilty of obstructing identification. During the sentencing hearing, the State asked the court to impose a $500 public defender fee. The court sentenced defendant to 10 weekends in jail, 2 years of conditional discharge, and a $500 fine. The court also imposed a $500 public defender fee. Defendant appeals.

¶ 16                                    ANALYSIS
¶ 17                                I. Directed Verdict
¶ 18    Defendant argues that the trial court erred in denying her motion for a directed verdict. Defendant contends that the State's evidence was insufficient for a reasonable person to conclude that she was lawfully detained when she furnished a false name to the police.

¶ 19    In reviewing defendant's challenge to the trial court's denial of her motion for a directed verdict, we must determine whether the evidence presented by the prosecution, viewed in the light most favorable to the prosecution, established defendant's guilt beyond a reasonable doubt. *People v. Barber*, 116 Ill. App. 3d 767 (1983).

¶ 20    Defendant was charged with obstructing identification, a Class A misdemeanor. 720 ILCS 5/31-4.5 (West 2010). To sustain a conviction of obstructing identification, the prosecution must prove that a person: (1) intentionally or knowingly provided a false or fictitious name, residence address, or date of birth to a peace officer; and (2) was either (a) lawfully arrested or detained, or (b) the information was requested from an individual that was reasonably believed to have witnessed a crime. 720 ILCS 5/31-4.5 (West 2010).

¶ 21    In the case *sub judice*, defendant argues that the State's case-in-chief was insufficient for a reasonable person to conclude her guilt and, therefore, the court should have granted her motion for a directed verdict. See *People v. Connolly*, 322 Ill. App. 3d 905 (2001). Defendant specifically argues that no evidence was presented that she was lawfully detained at the time she told Morefield that she gave her identification card to Honeycutt. However, we find that Morefield's testimony established that defendant was detained at the time she refused to

provide her name to the officer and represented that Wheeler's identification was actually hers.

¶ 22    Police-citizen encounters are generally limited to three circumstances: (1) an arrest supported by probable cause; (2) a brief investigatory stop based on a reasonable and articulable suspicion of criminal activity; and (3) an interaction for purposes of community caretaking or public safety. *People v. Laake*, 348 Ill. App. 3d 346, 349 (2004). Community caretaking encounters do not involve coercion or detention and therefore do not rise to the level of a seizure under the fourth amendment. *People v. Cordero*, 358 Ill. App. 3d 121, 125 (2005). A detention occurs when a reasonable, innocent person in the circumstances would believe that he or she would not be free to leave. *Laake*, 348 Ill. App. 3d at 349.

¶ 23    Here, Morefield testified that his department received a call that a Chevrolet had been parked at a gas pump for 30 minutes. Honeycutt's response and initial interaction with defendant falls within the public safety or community caretaking interaction and was not a seizure. See *Cordero*, 358 Ill. App. 3d at 125. However, when Morefield arrived at the scene, Honeycutt had finished a field sobriety test. Defendant's submission to the field sobriety test indicated that the stop had transformed into an investigatory stop based on suspicion that defendant was driving under the influence. At that point, defendant was not free to leave. Defendant's lawful detention was further evidenced by Honeycutt's possession of Wheeler's identification card that defendant had earlier provided. Honeycutt gave the card to Morefield, who further investigated the card, which did not match defendant's appearance. Thus, at the time Morefield approached defendant and asked for her name, defendant was lawfully detained. Defendant's refusal to provide her name and her representation that Wheeler's identification belonged to her completed the offense. As a result, the trial court did not err in denying defendant's motion for a directed verdict.

¶ 24                                    II. Closing Arguments

¶ 25    Defendant argues that she was denied a fair trial because the State repeatedly referred to Honeycutt's death during closing arguments and implied that defendant was attempting to take advantage of Honeycutt's death. Defendant also argues that the State's comment that defendant was smiling during the rebuttal argument caused further prejudice.

¶ 26    The determination of whether comments made by the prosecution in a closing argument warrant a new trial is a question of law that is reviewed *de novo*. *People v. Wheeler*, 226 Ill. 2d 92 (2007). The prosecution has wide latitude in making a closing argument and may comment on the evidence and any fair, reasonable inferences it yields, even if such inferences reflect negatively on defendant. *People v. Nicholas*, 218 Ill. 2d 104 (2005). The prosecution's arguments will result in reversible error only when they result in substantial prejudice against a defendant "to the extent that it is impossible to determine whether the jury's verdict was caused by the comments or the evidence." *People v. Caffey*, 205 Ill. 2d 52, 131 (2001). Closing arguments must be viewed in their entirety and in context. *Id*.

¶ 27    Reviewing the State's rebuttal argument, we do not find that its references to Honeycutt or defendant's smiling prejudiced the outcome of the proceeding. The State's comments were derived from Morefield's testimony that Honeycutt was killed in a car accident prior to trial. From this evidence, the State raised the inference that defendant had testified falsely because Honeycutt could not dispute her testimony. Although much of the State's rebuttal argument

focused on the impact of Honeycutt's absence, the inferences were fair given Morefield's testimony. Therefore, defendant was not denied a fair trial.

¶ 28                                III. Public Defender Fee

¶ 29    Defendant argues that the trial court erred when it entered a $500 public defender fee without holding a hearing on defendant's ability to pay the fee. The State confesses error.

¶ 30    Section 113-3.1 of the Code of Criminal Procedure of 1963 (Code) permits a court to order a defendant to pay a fee for the service of a public defender. 725 ILCS 5/113-3.1(a) (West 2010). However, before the fee may be imposed, a hearing must be conducted on either the court's own motion or on the motion of the State. *Id*. The hearing may be held any time after the appointment of counsel, but no later than 90 days after the entry of a final order disposing of the case. *Id*. A court may only order reimbursement if it finds that defendant has a reasonably foreseeable ability to pay. *People v. Love*, 177 Ill. 2d 550 (1997).

¶ 31    Here, the State made a motion to impose a $500 public defender fee during the sentencing hearing but did not request a hearing on defendant's ability to pay. Proceeding without a hearing or finding on defendant's ability to pay, the trial court ordered defendant to pay a $500 public defender fee. As a result, we reverse the $500 public defender fee and remand the cause for a hearing on defendant's ability to pay the fee.

¶ 32                          IV. Presentence Incarceration Credit

¶ 33    Defendant argues that she entitled to a $50 credit against her $500 fine for the 10 days she spent in presentence custody. The State concedes this issue.

¶ 34    Section 110-14 of the Code allows a "person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense *** a credit of $5 for each day so incarcerated." 725 ILCS 5/110-14(a) (West 2010). The credit is applicable only to a defendant's fines. *People v. Tolliver*, 363 Ill. App. 3d 94 (2006). In the instant case, defendant spent time in custody prior to trial and therefore is entitled to a credit to offset her fine. Because this case is being remanded for a public defender fee hearing, we also remand this issue to the trial court for a determination of the amount of defendant's presentence incarceration credit and application of the credit to defendant's fine.

¶ 35                                     CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed in part and reversed in part, and the cause is remanded with direction.

¶ 37    Affirmed in part and reversed in part; cause remanded.