**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190715-U

Order filed October 7, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-19-0715 Circuit No. 18-CF-185 |
| KYLE J. LERGNER, | ) ) | |
| Defendant-Appellant. | ) ) | Honorable Thomas W. Cunnington, Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Holdridge and Wright concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's stipulated bench trial was not tantamount to a guilty plea and defendant did not receive ineffective assistance of counsel.

¶ 2    Defendant, Kyle J. Lergner, appeals his conviction for driving with a suspended or revoked license. He argues that his stipulated bench trial was tantamount to a guilty plea and that his counsel provided ineffective assistance by failing to subject the State's case to meaningful adversarial testing. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    The State charged defendant with driving while his license was suspended or revoked (625 ILCS 5/6-303(d-3) (West 2018)). Defendant waived his right to a jury trial, and the court set the matter for a bench trial. Defense counsel filed a motion to suppress arguing that the officer, Officer Justin Miller,[1] stopped defendant based on a mere hunch.

¶ 5    On the date scheduled for defendant's bench trial, the court heard the motion to suppress. Defense counsel called defendant to testify. Defendant testified that he lived near a river, and on the day of the traffic stop, the river was rising, and his house was flooding. He tried contacting friends and family but failed to find help. He decided he needed to take his "vehicle and get out of there because everything was in flood." The temperature was twenty below zero so he could not walk in the water without risking hypothermia. Defendant stated it was a necessity for him to drive. If he did not, he probably would have froze to death.

¶ 6    Defendant began driving to his friend's house. Defendant testified that Justin Miller stopped him. Miller was the only officer present at the stop. Miller "told [defendant] that the reason why they pulled [him] over cause they got a call and they said that somebody seen [him] driving." The license plates on defendant's car belonged to the previous owner. Defense counsel asked defendant if he was on the street or parked when Miller approached, and defendant stated he was on the street. Counsel responded that he thought defendant was at a gas station, and defendant said, "No. I wasn't in no gas station." Defendant further stated he was driving when Miller stopped him. Counsel asked defendant if he knew his license was suspended or revoked and, after stating he was attempting to get it back, defendant admitted his license was revoked. After being asked by counsel the reason for his revoked license, defendant answered it was due to prior suspensions.

---

[1]Only one individual named Miller was involved in the stop. However, the defense identified that person as Justin Miller, and the State's witness, Officer Justin Wynne, identified that person as Paul Miller.

¶ 7    After defendant testified, defense counsel rested. The State called Officer Justin Wynne to testify. Wynne stated that he received an anonymous call through dispatch about defendant driving a Dodge Durango. Wynne did not know this individual's motivation in calling. Wynne observed both the Durango and its driver at a gas station. Wynne checked the mobile data system for a photograph of defendant. The photograph in the system resembled the driver of the Durango. The Durango's license plates were registered to a Chevy.

¶ 8    After the Durango left the gas station, Wynne initiated a traffic stop and made contact with the vehicle's driver, defendant. Wynne advised defendant that he stopped him because the vehicle's registration came back to a Chevy and not a Dodge. When Wynne asked defendant for proof of insurance and his driver's license, defendant gave Wynne a State identification card and did not have an insurance card.

¶ 9    Wynne identified the citations he issued defendant, which the State admitted into evidence. Wynne's supervisor, Sergeant Paul Miller, assisted him with the traffic stop. Wynne did not recall what the weather was like the day he stopped defendant. Wynne later explained that he would have initiated the traffic stop on the Durango regardless of the anonymous tip because "the vehicle's license plate was displayed on a Dodge Durango but came back to a Chevy."

¶ 10    Defense counsel objected to various questions the State asked Wynne and testimony given by Wynne. Defense counsel also cross-examined Wynne, including questioning him regarding the police report generated from the traffic stop, various grand jury testimony related to defendant's case, Miller's involvement, and the photograph of defendant that Wynne reviewed from the mobile data system.

¶ 11    After Wynne's testimony, the court heard closing arguments on the motion to suppress. Defense counsel argued that the State had not given any proof as to why Wynne stopped defendant

3

other than the anonymous call. He further argued that defendant drove the vehicle out of necessity due to the flooding of his house. The State argued that defendant was properly stopped due to the traffic violation for the Durango having license plates registered to a Chevy and requested the motion to suppress be denied. In rebuttal, defense counsel reiterated the necessity given the weather and stated, "I would ask that you find my client not guilty ***."

¶ 12 At that point, the State sought to clarify with the court that it was just hearing the motion to suppress. The court agreed. Defense counsel responded, "Judge, I think if you put on the whole hearing, you wouldn't have anything different. So if the State would agree, I would consider this the entire hearing." The State requested that the evidence be reopened to admit the defendant's driving abstract, and defense counsel agreed. The court inquired, "So there's a stipulation that the evidence that I just heard would be the evidence in the bench trial," along with the abstract, and defense counsel and the State agreed. The certified copy of the abstract showed defendant's license was revoked on the date he was stopped. It further evidenced defendant's prior driving infractions, which included multiple infractions for driving with a suspended or revoked license, as well as for driving while under the influence.

¶ 13 The court denied the motion to suppress, finding Wynne had probable cause and an "absolute right to stop [defendant]" because the license plates on the Durango were registered to a different vehicle. The court found defendant guilty. In doing so, the court expressly rejected defendant's necessity defense, noting that defendant did not call 911 or otherwise seek help from emergency personnel. Additionally, the court stated that assuming defendant could not wait for emergency personnel because of rising, freezing water, the court understood the necessity of needing to get to safety. But "the issue of necessity *** abates at the point where he gets out of the emergency situation that he finds himself in." Further, "once you get past the—the issue of the

4

emergency, I don't know that necessity requires that you go to a gas station and then keep driving, go somewhere else, go to a friend's house. That may have been the convenient thing to do, but I don't know if that was the necessity."

¶ 14     The court sentenced defendant to three years' imprisonment. Defendant appeals.

¶ 15                                   II. ANALYSIS

¶ 16     Defendant first argues that his stipulated bench trial was tantamount to a guilty plea such that the court was required to admonish him pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). In support of this argument, he asserts that counsel failed to present or preserve any viable defenses.

¶ 17     "[A] stipulated bench trial is not tantamount to a guilty plea if the defendant presented and preserved a defense." *People v. Horton*, 143 Ill. 2d 11, 22 (1991). "The reason why a stipulation that fails to preserve a defense is tantamount to a guilty plea is that the defendant, by failing to preserve a defense, functionally admits his guilt ***." *People v. Taylor*, 2018 IL App (2d) 150995, ¶ 12.

¶ 18     Here, defendant presented and preserved two defenses. He argued for suppression of evidence and the defense of necessity. Consequently, defendant did not functionally admit his guilt. While defendant argues that the defenses presented were not legally viable, "[i]n practice, appellate courts have not attached any significance to the type of defense presented or stipulated at the bench trial." *People v. Bonham*, 106 Ill. App. 3d 769, 772 (1982); see also *Taylor*, 2018 IL App (2d) 150995, ¶ 11 (determining that it was immaterial that pleading guilty would not have waived the defense the defendant presented and agreeing with the State that "the nature of the defense does not matter so long as defendant actually preserved a defense"). Defendant also contends that counsel did not preserve the defenses because counsel failed to file a motion for new

5

trial. But such a motion is unnecessary when the parties proceed by way of a stipulated bench trial. See *People v. Cordero*, 358 Ill. App. 3d 121, 124-25 (2005).

¶ 19     Defendant next argues that defense counsel provided ineffective assistance because counsel elicited from defendant the elements necessary to establish the crime and counsel failed to subject the State's case to meaningful adversarial testing.

¶ 20     "Ordinarily, to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial." *Horton*, 143 Ill. 2d at 23. "To show actual prejudice, defendant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). However, the two-part test need not be applied "[w]here 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing ***.' " *People v. Hattery*, 109 Ill. 2d 449, 461 (1985) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). *Hattery*'s ruling is to be narrowly construed and "defendant 'faces a high burden before he can forsake the two-part *Strickland* test.' " *Horton*, 143 Ill. 2d at 24 (quoting *People v. Johnson*, 128 Ill. 2d 253, 270 (1989)).

¶ 21     In *Horton*, the court determined that counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing where counsel cross-examined a witness and filed a pretrial motion to suppress. *Id.* at 25-26. Similarly, here, defense counsel cross-examined the State's witness and filed a motion to suppress. Further, counsel objected to questions posed to Wynne. Moreover, he presented the defense of necessity. Although, defendant asserts that the

necessity defense was not available to him, notably neither the court below nor the State recognized that, and the court actually ruled on the merits of the defense rather than finding it did not apply. Based on the foregoing, we conclude defense counsel did not entirely fail to subject the State's case to meaningful adversarial testing.

¶ 22 Turning to the two-part test, "if [an] ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *People v. Griffin*, 178 Ill. 2d 65, 74 (1997). In the instant matter, defendant suffered no prejudice from counsel's alleged deficient performance. Wynne's testimony readily established that defendant was driving and the certified copy of the abstract clearly showed defendant's license was revoked at the time he was driving. Moreover, defendant does not provide any argument that he had a meritorious defense that counsel could have presented or how the outcome of the proceeding would have been different absent counsel's allegedly deficient performance. Thus, defendant's ineffective assistance of counsel claim fails.

¶ 23                                      III. CONCLUSION

¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County.

¶ 25 Affirmed.